512 A.2d 674

**COMMONWEALTH of Pennsylvania,**

v.

**Brian Francis LITTLE, Appellant.**

Superior Court of Pennsylvania.

Argued April 22, 1986.

Filed July 9, 1986.

Mark D. Frankel, York, for appellant.

John S. Kennedy, Assistant District Attorney, York, for Commonwealth, appellee.

Before WICKERSHAM, BROSKY and WATKINS, JJ.

WICKERSHAM, Judge:

This is an appeal from the judgment of sentence imposed by the Honorable Joseph E. Erb of the Court of Common Pleas of York County. Appellant, Brian F. Little, was tried and convicted by jury of driving under the influence of alcohol.[1] We affirm the judgment of sentence.

On March 28, 1984, at approximately 6:08 P.M., appellant was operating his 1969 Pontiac Lemans in the Borough of Hanover in York County, Pennsylvania. As appellant approached the intersection of Cherry and Pine Streets, his automobile collided with another vehicle owned by one Robert L. Wherely of Hanover, Pennsylvania.

Being summoned to the scene, Sergeant James A. Baumgardner of the Hanover Borough Police Department approached appellant's vehicle as appellant was still seated therein. The officer observed several open cans of beer within the passenger compartment as he stood by the vehicle. Sergeant Baumgardner requested appellant to step from his vehicle, and upon doing so, the officer detected an obvious odor of alcoholic beverages on his person and on his breath. Additionally, appellant was observed having difficulty locating his operator's license, passing it by in his wallet several times, until the officer pointed out its location.

At this time, Officer Randy S. Whitson, also of the Hanover Borough Police Department, arrived at the accident scene and administered a series of field sobriety tests to appellant. Appellant failed the following field sobriety tests: "finger to nose test," [2] "alphabet test," [3] "walking

---

1. 75 Pa.C.S. § 3731(a)(1) and (a)(4).

2. Appellant was requested to stand with his heels together, head tilted slightly back, and his arms outstretched. Next appellant was to bring both arms in front of his chest with his forefingers outstretched. Appellant was instructed to touch the tip of his nose with his right forefinger, return his arm to the outstretched position, and then repeat the procedure with the left finger. Appellant failed to satisfy this test. *See* N.T. at 19–21.

3. Appellant was requested to simply recite the alphabet. He was unable to do so. *See* N.T. at 21–22.

test," [4] and "horizontal gaze nystagmus test." [5] Officer Whitson further testified at trial to appellant's intoxicated mannerisms, including bloodshot eyes, a swayed stance, and the odor of alcohol. Appellant was thereafter placed under arrest and transported to the McSherrystown Police Department in McSherrystown, Pennsylvania. At the McSherrystown station, appellant consented to be tested by breathalyzer to determine the amount of his blood alcohol content. Appellant's test results indicated a 0.22% blood alcohol content.

Appellant was tried before a jury on charges of driving under the influence of alcohol to a degree which renders the person incapable of safe driving and driving while the amount of alcohol by weight in the blood was .10% or greater. A guilty verdict was returned on both charges. Post-verdict motions being denied, appellant filed this timely appeal. Appellant sets forth four vague issues for our review.[6]

■ Appellant's first issue, more properly stated, is whether a photocopy of a certificate of accuracy issued for an Intoximeter Model 3000 is admissible into evidence under the statutory hearsay exception for business and public records found in the Uniform Photographic Copies of Business and Public Records as Evidence Act? We find that the lower court correctly received the evidentiary offer of the photocopy in this case.

**4.** Appellant was instructed to walk in a straight direction, turn, and walk back to his original starting point. Appellant almost lost his balance and fell. *See* N.T. at 22–23.

**5.** Appellant was asked to focus on the officer's finger, and to follow its movement without moving his head. Appellant was unable to follow the finger without moving his head. *See* N.T. at 23–24.

**6.** Appellant requests this court to address the following:
    A. Whether the intoximeter certificate was admissible.
    B. Whether the Commonwealth properly established the certification of the simulator solutions and ampoules.
    C. Whether the lower court erred in allowing the Commonwealth to reopen [its] case.
    D. Whether the verdict was supported by sufficient evidence.
Brief for Appellant at 3.

In Pennsylvania, the legislature has provided by statute that the amount of alcohol in a person's blood as shown by a chemical test of that person's breath, which test was conducted by a qualified person using approved equipment, is sufficiently reliable to be admissible in a criminal proceeding. 75 Pa.C.S. § 1547(c). The statute requires that the tests be conducted by devices approved by the Department of Health and Transportation. 75 Pa.C.S. § 1547(c)(1). A list of approved testing devices is contained in the Pennsylvania Bulletin. The list includes the Intoximeter Model 3000.[7] Section 1547(c)(1) of the Vehicle Code further provides that devices shall be calibrated and tested for accuracy within a statutory time period, and in a manner specified by regulation. A certificate is thereafter issued upon successful testing.

7.          **DEPARTMENT OF HEALTH**

**Equipment to Determine Blood Alcohol Content Under the Vehicle Code**
    The Department of Health has approved the following equipment for determining the alcoholic content of the blood by analysis of a person's breath. This list of approved equipment replaces the previous list which appeared at 14 Pa.B. 3202 (September 1, 1984), and is published under the authority contained in 75 Pa.C.S. § 1547(c)(1), known as the Vehicle Code ....
    Equipment approved under this notice may be used by law enforcement officials to obtain test results which will be admissible in evidence in any summary or criminal proceeding in which the defendant is charged with a violation of 75 Pa.C.S. § 3731 (driving under the influence of alcohol), or any other violation of the Vehicle Code arising out of the same action ....
    (a) *Type-A equipment.* The following equipment is approved for determining the alcoholic content of the blood by analysis of a person's breath:

\*      \*      \*      \*      \*      \*

    (4) Intoximeters, Inc. St. Louis, Missouri ...
    Intoximeter Model 3000....
16 Pa.B. 1866 (May 24, 1986). We note that pursuant to 75 Pa.C.S. § 6103(a) PennDOT is granted the general authority to promulgate rules and regulations in carrying out specific powers granted it by statute. Section 6103 is only applicable when PennDOT is authorized to act by some other provision of the Code, *Scanlon v. Commonwealth, Dep't. of Transp.*, 502 Pa. 577, 587, 467 A.2d 1108, 1113 (1983), herein 75 Pa.C.S. § 1547(c)(1). Therefore, we find persuasive those regulations cited within the instant opinion.

67 Pa.Code § 77.6 requires an accuracy inspection test to be conducted upon each breath testing device at 30–day intervals. Upon completion of the accuracy inspection procedure detailed in this section, the results are recorded, and a certificate of accuracy is signed and dated by the certified breath test operator who performed the accuracy inspection test. 67 Pa.Code § 77.6(c), (d).[8]

At trial, the Commonwealth was permitted to enter into evidence, over objection, a photocopy of a certificate of accuracy for the breathalyzer used to test appellant. No issue has been raised and no suggestion made that the proffered photocopy somehow differed from the original document.

Section 6109 of Title 42, the Uniform Photographic Copies of Business and Public Records as Evidence Act, provides, in pertinent part:

(b) **General rule.**—If any ... department or agency of government, in the regular course of business or activity, has kept or recorded any memorandum, writing, entry, print, representation, or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of the same to be recorded, copied or reproduced ... which accurately reproduces ... the original ..., [s]uch reproduction, when satisfactorily identified, is as admissible in evidence as

---

8. **§ 77.6. Accuracy inspection tests for Type A equipment.**
  \*    \*    \*    \*    \*    \*

  (c) *Certificate of accuracy.* Upon completion of the accuracy inspection procedure, the test record used to obtain the average deviation shall be recorded on a certificate of accuracy of a type provided or approved by the Department. The certificate of accuracy shall be signed and dated by the certified breath test operator who performed the accuracy inspection test. This certificate of accuracy shall be presumptive evidence of accuracy referred to in 75 Pa.C.S. § 1547 (relating to chemical testing to determine amount of alcohol or controlled substance).

  (d) *Transitional provision.* One accuracy inspection test shall be or shall have been performed upon each breath test device within 30 days prior to its being used to conduct the first actual alcohol breath test after January 13, 1983. This accuracy inspection test will start the cycle of 30–day inspection intervals ....

  67 Pa.Code § 77.6(c), (d).

the original itself in any judicial or administrative proceeding, whether the original is in existence or not.... 42 Pa.C.S. § 6109(b).

The Commonwealth produced the testimony of the certified breath test operator who performed the accuracy inspection test. This witness testified that the machine at issue was tested and calibrated in accordance with statutory procedure. N.T. at 58. The witness further identified the certificate of accuracy photocopy, noting that his signature was present, and that the breathalyzer serial number, the date, and the numerical calibration test results were contained therein. The witness ultimately testified that the photocopy was a true and correct copy of the original, and that the photocopies of the original document were in fact made in his presence.

The document clearly satisfied all of the essential requirements for admissibility of the photocopy pursuant to 42 Pa.C.S. § 6109(b).[9] Appellant's best evidence arguments are therefore meritless.

Appellant next contends that the Commonwealth did not properly admit evidence pertaining to certification of simulator solution[10] and ampoules utilized in the breath testing process. The lower court reasoned that "since there is no statutory requirement for the solutions which are used to test intoximeters to be certified, the Court also properly admitted the intoximeter results." Lower ct. op. at 3. To this finding we must agree.

9. Appellant cites to us *Commonwealth v. Cummings,* 338 Pa.Super. 149, 487 A.2d 897 (1985), in support of this very brief argument. We find *Cummings,* which concerned the admissibility of stopwatch accuracy documentation pursuant to 75 Pa.C.S. § 3368(d), clearly distinguishable on the facts of that case.

10. *Simulator solution* —An aqueous standard ethanol solution which, when equilibrated with air in a breath simulator device, produces an air-alcohol mixture that is designed to give a reading of .100% on breath test equipment and can be used to inspect or verify the accuracy of breath test devices.

■ Certification of these items is set forth under 67 Pa.Code § 77.24(d) and (e).[11] "Section 77.24(d) and (e), respectively, clarify that the certifications by the manufacturer of simulator solution and by the manufacturer of ampoules are to be based upon testing by an independent laboratory." 15 Pa.B. 682 (February 23, 1985).

This regulation requires that the manufacturers of ampoules certify to their users that the ampoules will give the anticipated results when used for alcohol breath tests, accuracy inspection tests or calibrations using breath test equipment, § 77.24(e). Certification of the accuracy of ampoules will insure the integrity of the entire testing procedure.... The Departments believe that the manufacturers of ampoules can most effectively, economically and efficiently analyze their own ampoules and certify their accuracy to their users.

14 Pa.B. 4600–601 (December 22, 1984). We find that the legislature has spoken on this issue and that the Commonwealth does not bear the burden of simulator solution or ampoule certification. The legislature has determined that the manufacturer is in the best position to test and certify its own product through independent testing. Furthermore, we find that the placing of such a product on the market by the manufacturer, after independent testing, to be certification to the user that the product will produce the intended results per statutory requirement. 67 Pa.Code § 77.24(d),

11. Section 77.24 of the Code states, in pertinent part:

\* \* \* \* \* \*

(d) *Simulator solution certification.* The manufacturer of simulator solution shall certify to the user that its simulator solution is of the proper concentration to produce the intended results when used for accuracy inspection tests or for calibrating breath test devices. This certification shall be based on gas chromatographic analysis.

(e) *Ampoule certification.* The manufacturer of ampoules utilized in Type A breath testing devices shall certify to the user that its ampoules will produce the intended results when used for actual alcohol breath tests, accuracy inspection tests or for calibrating breath test devices. The certification shall be based on laboratory testing conducted utilizing generally accepted scientific methods sufficient to ensure that the ampoules conform to manufacturer specification.

67 Pa.Code § 77.24(d), (e).

(e). Absent some suggestion that the products were in fact defective, the Commonwealth was under no burden to show certification of the manufacturer's product. We can find no merit to appellant's arguments regarding this issue.

Appellant next alleges, citing no authority for his position, that the lower court erred in permitting the Commonwealth to reopen its case. "It is within the discretion of the trial judge to permit either side to reopen its case to present additional evidence.... The trial court has the discretion to reopen a case prior to submission to a jury to prevent a failure or a miscarriage of justice." *Commonwealth v. Mathis*, 317 Pa.Super. 226, 232, 463 A.2d 1167, 1171 (1983) (citation omitted). Appellant's contention is therefore void of merit.

■ Lastly, appellant brings forth a sufficiency of the evidence issue, the foundation of which was laid by "boilerplate" motions before the court below. *See* Motion For New Trial And/or Arrest of Judgment, Dec. 3, 1984. This practice is contrary to this court's admonition in *Commonwealth v. Holmes*, 315 Pa.Super. 256, 461 A.2d 1268 (1983)(en banc), and its progeny, that our court would no longer consider issues preserved where they were not specifically set forth in writing and consisted of no more than sentences that "the evidence was insufficient to support the verdict" or that "the verdict was against the weight of the evidence." "[I]t is no longer merely a warning, but the law, that all issues not specifically raised in post-verdict motions are waived on appeal." *Commonwealth v. Cardona*, 316 Pa.Super. 381, 386, 463 A.2d 11, 14 (1983). *See also* Pa.R. Crim.P. 1123(a), (c)(3). Since, counsel for appellant has not complied with the dictates of *Holmes*, we cannot grant counsel the benefit of our review.[12]

**12.** We note in passing that appellant's argument is meritless. *See Commonwealth v. McGinnis*, 336 Pa.Super. 601, 486 A.2d 428 (1984); *Commonwealth v. Whiteman*, 336 Pa.Super. 120, 485 A.2d 459 (1984); *Commonwealth v. Litzenberger*, 333 Pa.Super. 471, 482 A.2d 968 (1984). *See also* footnotes 2–5 and accompanying text, *supra*.

Having found no issues among those presented by appellant which would warrant reversal of the court below, we affirm the judgment of sentence.

Judgment of sentence affirmed.

## JUDGMENT

On Consideration Whereof, it is now hereby ordered and adjudged by this Court that the Judgment of Sentence of the Court of Common Pleas, of York County is Affirmed.