607 A.2d 725

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Albert A. BROSNICK, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 23, 1991.

Decided May 18, 1992.

Rabe F. Marsh, III, Greensburg, for appellant.

John J. Driscoll, Dist. Atty., Timothy C. Andrews, Asst. Dist. Atty., Greensburg, for appellee.

Scott A. Bradley, Asst. Dist. Atty., Pittsburg, amicus curiae, for Dist. Atty. of Allegheny County.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

OPINION OF THE COURT

PAPADAKOS, Justice.

This is an appeal from the memorandum opinion and per curiam order of the Superior Court affirming the order of the Court of Common Pleas of Westmoreland County which denied Albert Brosnick's (Appellant's) Motion For New Trial. The only question presented is whether the trial court abused its discretion in refusing to grant a new trial based upon alleged after-discovered evidence. The factual and procedural history which gave rise to Appellant's request for a new trial can be summarized as follows.

On January 26, 1986, the Pennsylvania State Police arrested Appellant following an automobile accident and subjected him to an alcohol breath test at the Greensburg State Police Barracks. The level of Appellant's blood alcohol level was read at .104%—four one thousandths of a percent over the legal limit—and consequentially, Appellant was charged with violating 75 Pa.C.S. § 3361 (Driving at a Safe Speed); 75 Pa.C.S. § 3731(a)(4) (Operating a Vehicle While the Amount of Alcohol by Weight ... was 0.10% or Greater); and 75 Pa.C.S. § 3731(a)(1) (Operating a Vehicle While Under the Influence of Alcohol).

Appellant was tried by a jury on July 7, 1986, before the Honorable Joseph A. Hudock of the Court of Common Pleas of Westmoreland County (now a Judge of the Superior Court) and was found guilty of violating 75 Pa.C.S. § 3361 and 75 Pa.C.S. § 3731(a)(4). The jury acquitted Appellant

of the third charge (75 Pa.C.S. § 3731(a)(1)) and post-trial motions were filed and denied.

Five months later, on December 10, 1987, counsel for the Appellant learned for the first time, through an article published in the *Tribune Review,* a newspaper of general circulation in Westmoreland County, that the State Auditor General, the Honorable Donald Bailey, had conducted an investigation of Systems Innovation, Inc., the company that manufactures items used to test the accuracy of breath testing machines employed in the Commonwealth. On December 11, 1987, counsel filed a Motion for New Trial claiming the report was after-discovered evidence which provided a basis to challenge the accuracy and/or the reliability of his breath test and that this evidence was not available using reasonable diligence at the time of trial. Not surprisingly, the Commonwealth maintained that the evidence was in existence prior to, or at the time of trial, and argued that it could have been discovered if defense counsel had exercised reasonable diligence.

The trial court agreed with the Commonwealth that the alleged report was discoverable at the time of trial and concluded that Appellant was not entitled to a new trial. The motion for new trial was denied and Appellant was sentenced. On appeal to the Superior Court, Appellant raised as his only issue whether the trial court erred in denying his new trial request. That court affirmed based on the trial court's logic that since the evidence concerning the accuracy of the breath test was available at the time of trial it was discoverable, and the fact that it was difficult to gather such information did not put Appellant to the burden of using more than reasonable diligence in discovering this evidence prior to the conclusion of trial. We granted Appellant's petition for allowance of appeal to examine whether the deficiencies outlined in the Auditor General's report constitute the type of evidence which was discoverable through the use of reasonable diligence prior to the conclusion of the trial and was the type of evidence which would entitle a defendant to a new trial. *Commonwealth v.*

*Brosnick*, 395 Pa. Superior Ct. 649, 570 A.2d 585 (1989), and we now reverse.

■  It is well established that after-discovered evidence is the basis for a new trial only if it:

(1) has been discovered after the trial and could not have been obtained at, or prior to, the conclusion of the trial by the exercise of reasonable diligence;

(2) is not merely corroborative or cumulative;

(3) will not be used solely for impeaching credibility of a witness;

(4) is of such nature and character that a different verdict will likely result if a new trial is granted. *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246 (1988); *Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978) citing *Commonwealth v. Mosteller*, 446 Pa. 83, 88, 284 A.2d 786 (1971).

Furthermore, the proposed new evidence must be producible and admissible. *Commonwealth v. Scott*, 503 Pa. 624, 470 A.2d 91 (1983).

The evidence that Appellant desires the court to consider is a report which questions the accuracy of breath testing machines used in the Commonwealth. Specifically, the report, prepared by the Auditor General, attacks the credibility of the certificates of accuracy prepared by the manufacturer of all the simulator solution used to test the accuracy of each piece of Type A alcohol breath test equipment used by the State Police from 1982 to 1987. The report concluded with the startling statement that:

... Systems Innovation Inc. (the manufacturer) has been manufacturing simulator solution so poor in quality that it has jeopardized the credibility of the entire breath testing program in Pennsylvania. (Auditor General's Report at p. 3)

Supporting its conclusion, the report lists various facts gleaned from the investigation conducted by the Auditor General. For example, at a surprise inspection of the manufacturer's laboratory (located in the back room of a

Radio Shack store in Hallstead, Pennsylvania) quality control standards were found to be below the state and national levels. The manufacturer was found to be preparing the simulator solution from alcohol purchased from a local liquor store which was then mixed with filtered city water, instead of using pure, absolute ethyl alcohol. There were no written instructions given to employees concerning the production of the solution, nor were there any notes for the employees concerning the contents of the solution.

It was also discovered that the State Police receive shipments of the solution in bottles without expiration dates and without content certification certificates from independent testing laboratories. All of these deficiencies in the certification process led the investigators to conclude that the accuracy of certificates of simulator solution was unreliable.

The importance of the accuracy of simulator solutions is critical to the process of assuring that breathalyzer test results are correct. The Motor Vehicle Code, in fact, requires that approved testing equipment must be calibrated and tested for accuracy within a statutory time period in a manner specified by regulation. 75 Pa.C.S. § 1547(c).

67 Pa.Code § 77.6 requires that accuracy inspection tests are to be conducted upon testing devices at 30 day intervals. Ampoules of simulator solution are used to test the accuracy of the devices and are defined as "an aqueous standard ethanol solution which, when equilibrated with air in a breath simulator device, produce an air-alcohol mixture designed to give a reading of .100% on breath test equipment which can be used to inspect or verify the accuracy of the breath test device". 67 Pa.Code § 77.3. Certification of the accuracy of the ampoule solution is pivotal to the testing process and is provided for at 67 Pa.Code § 77.24(d) and (e). These sections require:

(d) Simulator solution certification. The manufacturer of simulator solution shall certify to the user that its simulator solution is of the proper concentration to produce the intended results when used for accuracy inspection

tests or for calibrating breath test devices. The certification shall be based on gas chromatographic analysis. (e) Ampoule certification. The manufacturer of ampoules utilized in Type A breath testing devices shall certify to the user that its ampoules will produce the intended results when used for actual alcohol breath tests, accuracy inspection tests or for calibrating breath test devices. The certification shall be based on laboratory testing conducted utilizing generally accepted scientific methods sufficient to ensure that the ampoules conform to manufacturer specification.

The regulatory scheme indicates an assumption that the manufacturers of the ampoules are in the best position to analyze their own ampoules in an effective, economical and efficient manner and that, when they certify the accuracy of the ampoule, all users can assume that the product is accurate and will produce the intended results. The Departments of Health and Transportation have adopted this position through the publishing of regulations in the *Pennsylvania Bulletin* (14 Pa. Bulletin 4600–601 (December 22, 1984) where they explain, "The Departments believe that the manufacturers of ampoules can most effectively, economically and efficiently analyze their own ampoules and certify their accuracy to their users.") The Superior Court has concluded from this that the manufacturer's certificate presumptively establishes the accuracy of the ampoule and that the Commonwealth (the party with the burden of proof) is entitled to rely on the certificate and to introduce it into evidence in any relevant proceeding with no burden to go behind the manufacturer's certification to insure that the manufacturing process has, in fact, been complied with. *Commonwealth v. Little*, 354 Pa. Superior Ct. 546, 512 A.2d 674 (1986).

Such a conclusion is consistent with one of the purposes of 75 Pa.C.S. § 1547 which is to facilitate the acquisition of chemical testing under scientifically accepted standards, and to permit their utilization in legal proceedings so that intoxicated drivers are removed from the roads of the

Commonwealth. When applied to manufacturer's certificates, the presumption of accuracy can be justified in light of the fact that the Commonwealth has no access to the records, test results, or laboratories used to prepare the ampoules and, in light of the fact that when the preparation is done according to scientifically accepted practices, the accuracy of the sample is virtually assured. Under such circumstances, it is reasonable to expect that manufacturers will follow accepted practices in preparing certificates and, therefore, to allow all users of the product to rely on its accuracy including the Commonwealth and individuals tested on the machines.

At trial, Appellant did not challenge the manufacturer's certificates, the validity of the methods used to prepare the ampoules, nor did he challenge whether the ampoules, which had been destroyed, met the manufacturer's specifications and the question becomes whether "reasonable diligence" required him to do so. It is true that the evidence concerning the shoddy preparation tactics of the manufacturer was in existence at the time of the trial (though not in the possession of the Commonwealth) and, as a theoretical matter, Appellant could have investigated and discovered what the Auditor General discovered with his army of financed investigators. It is to be noted that the investigation conducted by the Auditor General's Office took some nine months to complete. To suggest that the ordinary defendant under the same set of circumstances is required to expend the same resources to meet the test of reasonable diligence is ludicrous, to say the least.

It is also true that the presumption which exists in favor of the accuracy of the certificate is one based on the reasonable expectation that all can rely on the accuracy of the certificates because they are scientifically prepared by professionals and that it would unnecessarily complicate the disposition of such cases if experts had to be called to prove the authenticity of every manufacturer's certificate in every breathalyzer case.

■ What we infer from this is that while a defendant may unearth information which the party with the burden of proof is not required to uncover, in this type of case, such diligence in investigation goes beyond what is reasonably expected. Reasonable diligence can never be interpreted to require a party to prove the accuracy of what the party with the initial burden of proof is statutorily excused from doing especially where, as here, that evidence is not easily accessible to either party. Accordingly, we conclude that the trial court erred in determining that the information contained in the Auditor General's Report could have been obtained using the exercise of reasonable diligence.

■ We further conclude that the evidence contained in the Auditor General's Report is neither cumulative nor corroborative and is not solely for impeaching the credibility of a witness because the Appellant is not asserting that the police officer did not tell the truth. At trial, the Commonwealth introduced evidence that all of the calibration tests were accurate since the officer used solution certified by Systems Innovation when he conducted those tests; however, this report now casts a serious cloud of uncertainty upon the accuracy of the simulator solution and on the accuracy of the tests performed on the breathalyzer machine which was the only evidence used to establish Appellant's intoxication. Therefore, this evidence is of such a nature and character that a different verdict would likely result if a new trial is granted.

The judgment of sentence is reversed and the matter is remanded to the lower court for a new trial.

CAPPY, J., files a dissenting opinion in which McDERMOTT, J., joins.

CAPPY, Justice, dissenting.

I dissent and would affirm upon the basis of the rationale set forth in the opinion of the learned trial court.

McDERMOTT, J., joins in this dissenting opinion.