**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Reed Atville STARR, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 31, 1999.
Filed Sept. 21, 1999.

---

John F. Lyons, Harrisburg, for appellant.

Michael Schwoyer, Asst. Dist. Atty., Carlisle, for the Com., appellee.

Before JOHNSON, JOYCE and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Appellant, Reed Atville Starr, appeals from his October 7, 1998 judgment of sentence of a $300 fine and forty-eight (48) hours to twenty-three (23) months' impris-

onment imposed after he was convicted of driving under the influence of alcohol.[1]

¶ 2 The evidence adduced at trial indicates that Patrolman William Strayer of Upper Allen Township was on routine patrol in a marked police car on August 15, 1997. At 9:51 p.m., while working the night shift, Officer Strayer received a report from county control that a citizen had called in a report of a possible drunk driver. The citizen indicated that he had followed a purple or maroon Ford Explorer, license number SCL531, for several miles over several roads. The vehicle was being driven erratically and weaving back and forth, and the citizen was concerned for the safety of the public. Eight minutes after receiving the citizen's report, Officer Strayer spotted appellant's vehicle and followed him for approximately one and one-half miles. His patrol car was equipped with a video camera, which was activated as Strayer followed appellant. Strayer observed appellant's vehicle being driven erratically and repeatedly straddling the white fog line on the right side of the road. At one point, for approximately 300 yards, the vehicle's right tires rode on top of the fog line. On two occasions, the officer also observed dust come from under the vehicle's right tires as they left the edge of the road. After the second of these occasions, Strayer stopped appellant's vehicle. As he spoke with appellant, Strayer detected the odor of alcohol. Appellant subsequently failed a field sobriety test and was arrested for DUI. Chemical testing of appellant's breath indicated a blood alcohol level of .152 percent.

¶ 3 On April 3, 1998, a hearing was held on appellant's omnibus pretrial motion to suppress. Due to the nature of appellant's claim on appeal, a detailed review of this hearing is necessary. The sole issue addressed at the hearing was whether Strayer had reasonable and articulable suspicion so as to justify the stop of appellant's vehicle. The parties stipulated that if the court found that Strayer properly conducted the traffic stop, the subsequent arrest for DUI was lawful. Strayer testified to receiving the radio report that appellant's vehicle was "weaving back and forth so much to the point that the person who called believed that the operator was driving under the influence." (N.T., 4/3/98, at 9–10.) He also testified that as he followed appellant, "the vehicle swayed and on several occasions the tires of the vehicle rode onto the white line on the right side and on one occasion they crossed over the right side of Lisburn Road.... He would swerve over right on the line and then come back over, and I believe there were three or four occasions when he did this." (N.T. at 14.) Under questioning by the district attorney, Strayer stated he stopped appellant's vehicle for two reasons: based upon the radio report, he was concerned for public safety, and he personally observed appellant's erratic driving (N.T. at 20–21). On cross-examination, Strayer also testified he based the traffic stop on his observations of appellant's driving. The specific section he believed appellant had violated was 75 Pa. C.S.A. § 3309, **Driving on roadways lined for traffic**, which provides, "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." [2]

¶ 4 Following the hearing, the court concluded that Officer Strayer lacked rea-

---

1. Appellant was convicted of violating 75 Pa. C.S.A. § 3731(a)(1)(4).

2. Section 3309(1) provides in its entirety:
 **§ 3309. Driving on roadways lined for traffic**
 Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:
 (1) Driving within single lane.—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

sonable grounds to suspect a violation of section 3309, because that section does not require "perfect adherence to driving entirely within a single marked lane on all occasions."[3] (Slip Op. Guido, J., 5/7/98, at 3–4, citing *Commonwealth v. Malone*, 19 D & C 4th 41, 44 (C.P. Cumberland County 1993).) Nonetheless, the court denied appellant's motion to suppress. In an Opinion in support of its Order denying suppression, the court stated it had conducted its own review of the videotape from Strayer's patrol car. Based on this review, the court concluded appellant's vehicle weaved constantly, the vehicle's tires were on the berm numerous times, the vehicle almost struck a traffic sign and appellant's driving was erratic. (Slip Op. at 3.) The court further concluded that based upon all the facts before him on the night in question—the citizen's report of a possible drunk driver and his own observations of appellant's driving—Officer Strayer "had, at the very least, a reasonable and articulable basis to stop the Defendant to investigate a possible Driving Under the Influence offense. 75 Pa.C.S.A. 3731." (Slip Op. at 4.) On this basis, the court denied appellant's suppression motion and,

following a nonjury trial, he was convicted of DUI.[4] This appeal followed.

 ¶5 Appellant claims that because Officer Strayer testified the traffic stop was based upon a suspected violation of section 3309, the trial court improperly substituted its judgment for that of the officer when it determined the stop was justified because Strayer had a reasonable and articulable basis to suspect appellant of DUI.[5] In a related claim, appellant argues the trial court violated his constitutional right to a fair hearing by substituting its judgment for that of Officer Strayer. We reject these claims. Initially, appellant's claims are erroneously based on the assumption that Officer Strayer stopped appellant based solely on the suspicion that he had violated section 3309. Instead, as noted, Officer Strayer testified at length that the stop was based on the citizen's report of a possible DUI and on his own observation of appellant's erratic driving.[6] Far from substituting its own judgment for that of Officer Strayer, the court recognized "the officer did state that the violation of section 3309(1) was not the only basis for his stop. He said it was based on all of the circumstances ex-

---

3. The court emphasized that, as in *Commonwealth v. Malone*, 19 D & C4th 41, 44 (C.P. Cumberland County 1993), there were no other vehicles on the road at the time Officer Strayer followed appellant.

4. The charge under section 3309 was dismissed.

5. Appellant's first claim reads as follows:

 [T]he suppression court erred in failing to grant appellant's motion for suppression where the court determined that the stop of appellant's vehicle was not justified for the reasons articulated by the arresting officer, but formulated its own conclusions as to the manner of appellant's driving to justify the stop of appellant's vehicle, which conclusions differ from the facts and observations articulated by the arresting officer as his justification for the stop of appellant's vehicle.
 (Appellant's Brief at 3.)

6. Officer Strayer testified as follows:

 Q. So what was the reason ultimately or the reasons I should say that you pulled this car over?
 A. My first was the level of concern from our original caller that he had not only taken the time to contact Cumberland County Control, but he had actually followed his car over several roads in several directions and attempted to stay with this car as much as possible until the police arrived in the area.
 Q. And what else?
 A. Once I saw that car, seeing it matched the description and, as you saw there, there was very limited other traffic in the area, noticed that the car on several occasions rode onto the white line and at least on one occasion, maybe more, that it actually crossed over to the point you can see the white line on the inside edge of the tire, the right side tire.
 Q. The areas in which the car went over too far on the right-hand side—
 A. Um-hum.
 (N.T., 4/3/98, at 20–21.)

isting that night." (Slip Op. at 4 n. 4.) As the trial court noted, we have repeatedly held that an investigatory traffic stop may be based upon an officer's observation of erratic driving. *See e.g. Commonwealth v. Hamme*, 400 Pa.Super. 537, 583 A.2d 1245 (1990); *Commonwealth v. Lymph*, 372 Pa.Super. 97, 538 A.2d 1368 (1988). Also, where the officer has not witnessed erratic driving first hand, authority for a traffic stop nonetheless exists where the officer receives a report from another officer or citizen witness and later personally observes the erratic driving. *See e.g. Hamme, supra; Commonwealth v. Levesque*, 469 Pa. 118, 364 A.2d 932 (1976); *Commonwealth v. Guerry*, 469 Pa. 20, 364 A.2d 700 (1976). It is true, as appellant suggests, the trial court drew certain factual conclusions based on its review of the videotape. Nonetheless, in concluding that Officer Strayer had reasonable and articulable suspicion to conduct a traffic stop of appellant's vehicle, the court clearly relied upon Strayer's testimony and the other facts available to him on the night in question.

■ ¶ 6 In reviewing a trial court's denial of a motion to suppress, our responsibility is to determine whether the record supports the factual findings of the suppression court and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989). We must consider the evidence of the prosecution's witnesses and so much of the evidence of the defense, as read in the context of the record as a whole, remains uncontradicted. *Id.* Employing this standard of review, we find no error in the trial court's conclusion that the facts known to and articulated by Officer Strayer provided a lawful basis for the stop of appellant's vehicle. *See Hamme, supra* (police report of defendant's erratic driving sufficient to constitute reasonable and articulable suspicion to support a traffic stop).[7] Accordingly, we reject appellant's claim that the trial court impermissibly substituted its judgment for that of Officer Strayer.[8]

■ ¶ 7 Appellant's final claim is that the trial court erred "in admitting the results of the chemical testing of appellant's breath into evidence where the Commonwealth failed to establish that the simulator solution or ampoules used in the accuracy testing and in the actual testing itself were certified by the manufacturer to produce the results intended and that such certification resulted from tests conducted by independent laboratories." (Appellant's Brief at 8–9.) This issue arose during the trial testimony of Cathleen Cook, a certified operator of the Intoxilyzer 5000, the device used to conduct alcohol testing of appellant's breath. Defense counsel objected to the admissibility of the test results on the basis that the Commonwealth did not admit into evidence a manufacturer's certification of the simulator solution used in conjunction with the device.[9] The trial court found, and we agree, that resolution of this issue is controlled by the holding of *Commonwealth v. Little*, 354 Pa.Super. 546, 512 A.2d 674 (1986). In that case, a panel of this Court rejected

---

7. Of course, as appellant recognizes, once Officer Strayer detected the odor of alcohol and appellant failed the field sobriety tests, probable cause existed to arrest appellant for DUI. *See Commonwealth v. Hamme*, 400 Pa.Super. 537, 583 A.2d 1245 (1990) (detection of odor of alcohol on breath and failure of field sobriety test was sufficient to establish probable cause for arrest after valid traffic stop).

8. In light of this finding, appellant's related constitutional claim also fails.

9. The Commonwealth did admit certificates of accuracy and calibration for the Intoxilyzer 5000. 67 Pa.Code § 77.22 defines "simulator solution" as follows:

 *Simulator solution.*—An aqueous standard ethanol solution which, when equilibrated with air in the breath simulator device, produces an air-alcohol mixture of a predetermined concentration that is designed to give a specific reading on breath test equipment and can be used to calibrate and verify the accuracy of Type A alcohol breath test devices.

the precise claim raised by appellant herein:

> Appellant next contends that the Commonwealth did not properly admit evidence pertaining to certification of simulator solution and ampoules utilized in the breath testing process. The lower court reasoned that 'since there is no statutory requirement for the solutions which are used to test intoximeters to be certified, the Court also properly admitted the intoximeter results.' Lower ct. op. at 3. To this finding we must agree.

*Id.* at 677 (citation omitted). As *Little* noted, the certification requirements of simulator solution and ampoules are set forth under 67 Pa.Code § 77.24(d) and (e), which at this time provide: [10]

> (d) Simulator solution certification. The manufacturer of simulator solution shall certify to the test user that its simulator solution is of the proper concentration to produce the intended results when used for accuracy inspection tests or for calibrating breath test devices. This certification shall be based on a gas chromatographic analysis by a laboratory independent of the manufacturer.
>
> (e) Ampoule certification. The manufacturer of ampoules utilized in Type A breath testing devices shall certify to the user that its ampoules will produce the intended results when used for actual alcohol breath tests, accuracy inspection tests or for calibrating breath test devices. The certification shall be based on laboratory testing conducted by a laboratory independent of the manufacturer. The laboratory testing shall employ generally accepted scientific methods sufficient to insure that the ampoules conform to manufacturer specification.

Discussing these provisions, the *Little* court continued:

> 'Section 77.24(d) and (e), respectively, clarify that the certifications by the manufacturer of simulator solution and by the manufacturer of ampoules are to be based upon testing by an independent laboratory.' 15 Pa.B. 682 (February 23, 1985).[11]

This regulation requires that the manufacturers of ampoules certify to their users that the ampoules will give the anticipated results when used for alcohol breath tests, accuracy inspection tests or calibrations using breath test equipment, 77.24(e). Certification of the accuracy of ampoules will ensure the integrity of the entire testing procedure.... The Departments believe that the manufacturers of ampoules can most effectively, economically and efficiently analyze their own ampoules and certify their accuracy to their users.

14 Pa.B. 4600–601 (December 22, 1984). We find that the legislature has spoken on this issue and that the Commonwealth does not bear the burden of simulator solution or ampoule certification. The legislature has determined that the manufacturer is in the best position to test and certify its own product through independent testing. Furthermore, we find that the placing of such a product on the market by the manufacturer, after independent testing, to be certification to the user that the product will produce the intended results per statutory requirement. 67 Pa. Code 77.24(d), (e). *Absent some suggestion that the products were in fact defective, the Commonwealth was under no burden to show certification of the manufacturer's product.*

*Id.* at 678 (emphasis added). As the trial court found, appellant in this case has not suggested that the simulator solution or ampoules used in the testing of his breath were defective. Thus, *Little* provides that the Commonwealth had no burden to pro-

---

**10.** Since the 1986 decision in *Commonwealth v. Little,* 354 Pa.Super. 546, 512 A.2d 674 (1986), the Pennsylvania Code has been modified so as to require specifically that certifica-

tion be done by a laboratory independent of the manufacturer.

**11.** *See* footnote 10.

duce certifications for the solution or ampoules.

¶ 8 In order to avoid this conclusion, appellant argues *Little* no longer represents the law of the Commonwealth. According to appellant, subsequent rulings of this Court "clearly indicate that the law now requires the Commonwealth to show full compliance with both the statutory and regulatory requirements pertaining to chemical testing of breath as a pre-condition to admissibility, including establishing that the simulator solution and ampoules used to establish the accuracy of the machine's operation have been properly tested and certified." (Appellant's Brief at 22.) In support of this argument, appellant relies principally on two cases, *Commonwealth v. Townsend*, 418 Pa.Super. 48, 613 A.2d 564 (1992), and *Commonwealth v. Thill*, 417 Pa.Super. 485, 612 A.2d 1043 (1992). However, as the trial court noted, *Townsend* and *Thill* are inapposite. In both cases, this Court held that where the evidence demonstrated that the laboratory which determined the accuracy of the simulator solution was not independent of the solution's manufacturer, it was error to admit a breath test because 67 Pa.Code § 77.24 requires that accuracy be determined by an independent laboratory. Neither case involved the Commonwealth's obligation to produce certificates for the solution or ampoules. Instantly, there was no question as to the independence of the laboratory testing the solution used to determine appellant's blood alcohol level. Instead, appellant is claiming the Commonwealth has a general obligation to produce the certificates, even where there is no suggestion of a product defect. *Little* rejected this claim and its decision in this regard has been cited as recently as 1998. *See Commonwealth v. Hoopes*, 722 A.2d 172, 176 (Pa.Super.1998) ("Instantly, we agree with the trial court that *Little* is binding precedent. Appellant has introduced no evidence to suggest that the laboratory's product was defective. Consequently, the Commonwealth was not required to produce certification by an independent laboratory, and the tri-al court properly rejected Appellant's argument."); *see also Commonwealth v. Brosnick*, 530 Pa. 158, 607 A.2d 725, 729 (1992) ("The Superior Court has concluded ... that the manufacturer's certificate presumptively establishes the accuracy of the ampoule and that the Commonwealth (the party with the burden of proof) is entitled to rely on the certificate[.] *Little*, [*supra*]. Such a conclusion is consistent with one of the purposes of 75 Pa.C.S. § 1547 which is to facilitate the acquisition of chemical testing under scientifically accepted standards, and to permit their utilization in legal proceedings so that intoxicated drivers are removed from the roads of the Commonwealth."). As these cases indicate, *Little* remains good law and we reject appellant's claim to the contrary. Likewise, we reject appellant's claim that *Little*'s requirement that a defendant produce some suggestion of a product defect improperly shifts the burden of proof from the Commonwealth to the defendant. Far from shifting the burden of proof from the Commonwealth, *Little* establishes a rebuttable presumption that placing the solution or ampoules on the market, after independent testing, constitutes certification that the products will operate as intended. Defendants are permitted to rebut that presumption with some evidence of a product defect. Instantly, appellant failed to offer evidence of a defect and the Commonwealth was therefore entitled to rely on the presumption of accuracy. Accordingly, we find no abuse of discretion in the trial court's admission of the test results. *See Commonwealth v. Verticelli*, 550 Pa. 435, 706 A.2d 820 (1998) (an appellate court will not reverse a trial court's evidentiary ruling absent an abuse of discretion).

¶ 9 Having rejected appellant's claims on appeal, we affirm the October 7, 1998 judgment of sentence.

¶ 10 Judgment of sentence affirmed.