J-S16004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK CHRISTOPHER HESS | |
| Appellant | No. 1330 MDA 2014 |

Appeal from the Judgment of Sentence February 11, 2014
In the Court of Common Pleas of Lebanon County
Criminal Division at No: CP-38-CR-0000401-2013

BEFORE:  PANELLA, J., OLSON, J., and OTT, J.

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 27, 2015**

Appellant, Mark Christopher Hess, appeals from the judgment of sentence entered by the Lebanon County Court of Common Pleas after his conviction of two counts of driving under the influence ("DUI") following a bench trial.  He challenges the admissibility of evidence and the sufficiency and weight of the evidence.  We affirm.

On December 30, 2012, Hess was driving on State Route 72 when he sped past Pennsylvania State Police ("PSP") Trooper Kara Sadusky at a pace of 68 miles-per-hour in a 45 miles-per-hour zone. Trooper Sadusky conducted a traffic stop and while reviewing Hess's identification documents, she noticed a strong odor of alcohol.  She also observed that he had bloodshot and glassy eyes, slurred speech, and acted sluggish.  She administered a field sobriety test.  Hess failed.  Trooper John Huffstutler

transported Hess to the State Police Jonestown Barracks, where Trooper Christopher O'Brien administered a chemical breath test using the Datamaster DMT device. The test results showed that Hess had a blood alcohol level ("BAC") of .091% and .095%. He was charged with one count DUI – Second Offense pursuant to 75 Pa.C.S.A. § 3802(a)(2); one count DUI – General Impairment – Second Offense, pursuant to 75 Pa.C.S.A. § 3802(a)(1); a speeding violation, and other driving offenses.

At Hess's bench trial, Trooper Sadusky testified regarding the circumstances leading up to his arrest. Trooper Huffstutler testified that Hess confessed to him while at the police barracks that he had had four or five beers earlier that day. Trooper O'Brien testified at length regarding his training on the Datamaster DMT[1] and the administration of Hess's breath test. Corporal Edward Burns, the trooper in charge of breathalyzer device maintenance, testified regarding the procedures he follows in calibrating the Datamaster DMT annually and in checking its accuracy on a monthly basis, stating that his maintenance regimen complied with the requirements set forth in 75 Pa.C.S.A. § 1547(c)(1). The trial court admitted into evidence the certificates showing that the calibration and accuracy tests had been performed as required. Hess did not object to the admission of those certificates. Prior to the admission of Hess's BAC test results, his attorney

---

[1] The court took judicial notice that the Datamaster DMT is an approved BAC testing device. Hess did not object.

lodged a general foundational objection, stating that the Commonwealth's witnesses had not followed the "policies and protocol as they have a responsibility so to do as to codes, as to admissibility of breath testing results." Notes of Testimony, Trial, 2/11/14, at 146. The court overruled the objection and admitted Hess's BAC test results into evidence.

The court found Hess guilty of the DUI and speeding offenses, and sentenced him to a term of five days' to six months' incarceration. After the denial of his post sentence motions, he timely appealed to this Court.

Hess raises the following issues for our review.

> a. Did the Commonwealth, as a matter of law, provide insufficient evidence to meet its burden of proof with regard to Count I, 75 Pa.C.S.A. § 3802(a)(2) where they failed to comply with 67 Pa.Code 77.24(d) and 67 Pa.Code § 77.24(e) in that the Commonwealth failed to present any evidence concerning the manufacturer of the simulator solution; what independent laboratory certified the solution based on gas chromatographic analysis; or who the manufacturer of the ampoules was; or what generally accepted scientific methods were used to insure that the ampoules conformed to manufacturer specifications.[2]

---

[2] Simulator solution is placed in ampoules which are used to test the accuracy of a breathalyzer device. The solution is defined as:

> An aqueous standard ethanol solution which, when equilibrated with air in a breath simulator device, produces an air-alcohol mixture of a predetermined concentration that is designed to give a specific reading on breath test equipment and can be used to calibrate and verify the accuracy of Type A alcohol breath test equipment.

77 Pa.Code § 77.22.
*(Footnote Continued Next Page)*

b. Whether the trial court's verdict of guilt as to 75 Pa.C.S.A. § 3802(a)(1) – DUI: General Impairment was against the weight of the evidence as the Trooper was unable to link any observations of unsafe driving to Hess and the Commonwealth's evidence did not establish that Hess' mental and physical faculties were impaired such that he could not safely operate a motor vehicle.

Appellant's Brief at 1.

Hess first avers that the court should not have admitted his BAC test results into evidence because the Commonwealth made "no reference" to the manufacturer or certification of the simulator solution ampoules used to test the PSP's breathalyzer device and, thus, "failed to comply with 67 Pa. Code § 77.24(d) and (e)."[3] Appellant's Brief at 20, 23. Although his

*(Footnote Continued)* ———————

[3] 67 Pa.Code 77.24(d) and (e) provide:

(d) *Simulator solution certification.* The manufacturer of simulator solution shall certify to the test user that its simulator solution is of the proper concentration to produce the intended results when used for accuracy inspection tests or for calibrating breath test devices. This certification shall be based on gas chromatographic analysis by a laboratory independent of the manufacturer.

(e) *Ampoule certification.* The manufacturer of ampoules utilized in Type A breath testing devices shall certify to the user that its ampoules will produce the intended results when used for actual breath tests, accuracy inspection tests or for calibrating breath test devices. The certification shall be based on laboratory testing conducted by a laboratory independent of the manufacturer. The laboratory testing shall employ generally accepted scientific methods sufficient to insure that the ampoules conform to manufacturer specification.

introductory sentence of this issue is framed in his "Questions Presented" as a challenge to the sufficiency of the evidence, Hess does not discuss the elements of the DUI offenses or any authority pertaining to review of sufficiency of the evidence. Rather, he argues only that the Commonwealth should have introduced evidence concerning the manufacturer's certification of the simulator solution ampoules before the court admitted evidence of his BAC levels.

It is well-settled that evidence is admitted at trial at the discretion of the trial court. **See Commonwealth v. Montalvo**, 986 A.2d 84, 94 (Pa. 2009). No evidentiary ruling will be reversed absent a showing that the court clearly abused that discretion. **See id**.

Hess concedes that this Court's decision in **Commonwealth v. Little**, 512 A.2d 674 (Pa. Super. 1986), a case in which the appellant raised the identical issue raised here, provides that "the Commonwealth does not bear the burden of producing the certificate for the simulator solution or ampoules at trial." Appellant's Brief at 23. He also acknowledges that there is a "rebuttable presumption that placing the simulator solution on the market, after independent testing, constitutes certification that the products will operate as intended." **Id**. at 22 (citing **Little**).

Hess is correct. The Commonwealth did not have the burden to introduce at trial the manufacturer's certifications for the simulator solution or ampoules. In fact, the **Little** court quite pointedly stated: "Absent some

suggestion that the products were in fact defective, the Commonwealth was under no burden to show certification of the manufacturer's product." *Id*. at 678. *See also Commonwealth v. Starr*, 739 A.2d 191, 197 (Pa. Super. 1999) (observing that *Little* established "a rebuttal presumption that placing the solution or ampoules on the market, after independent testing, constitutes certification that the products will operate as intended."). Our Supreme Court has agreed, noting that

> Such a conclusion is consistent with one of the purposes of 75 Pa.C.S. § 1547 which is to facilitate the acquisition of chemical testing under scientifically accepted standards, and to permit their utilization in legal proceedings so that intoxicated drivers are removed from the roads of the Commonwealth. When applied to manufacturer's certificates, the presumption of accuracy can be justified in light of the fact that the Commonwealth has no access to the records, test results, or laboratories used to prepare the ampoules and, in light of the fact that when the preparation is done according to scientifically accepted practices, the accuracy of the sample is virtually assured.

*Commonwealth v. Brosnick*, 607 A.2d 725, 729 (Pa. 1992).

Our review of the trial transcript indicates Hess neither questioned the quality of the solution or ampoules used in the Datamaster DMT, nor requested information regarding the manufacturer or testing of the solution. As noted above, the burden was on Hess to raise a defect that would necessitate the admission of the manufacturer's certifications and related evidence. This he did not do. Accordingly, the trial court did not abuse its discretion in admitting the BAC test results.

In his next issue, Hess challenges the weight of the evidence by asserting that Trooper Sadusky's "opinion that [he] was incapable of safe driving was based on mere subjective factors that do not scientifically correlate to levels of impairment." Appellant's Brief at 26. That is the sum and substance of his weight argument before he concludes, "the finding of guilt was so contrary to the evidence presented at trial as to shock one's sense of justice." *Id*. Hess utterly fails to develop his weight challenge with proper reference to the record, citation to authority, and meaningful analysis. Accordingly, his weight challenge is waived. *See* Pa.R.A.P. 2119, and *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa.Super.2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) (finding issue waived because the appellant "cited no legal authorities nor developed any meaningful analysis").

Hess also argues, within his weight claim, that the Commonwealth "failed to prove … [that] he [had] consumed ethanol to such a degree that it substantially impaired his ability as to the essential acts of safe driving." Appellant's Brief at 24 (citing 75 Pa.C.S.A. § 3802(a)(1)). He recites the elements that must be proven to "sustain a conviction of the common law theory of alcohol-related DUI" as set forth in *Commonwealth v. Kowalek*, 647 A.2d 948 (Pa. Super. 1994), before summarily concluding that the Commonwealth "relied entirely on speculative, non-specific, circumstantial evidence to support its accusation that Hess had imbibed alcohol."

Appellant's Brief at 25 and n.4. This argument is a challenge to the sufficiency, not the weight, of the evidence, and it is without merit.

Our standard of review of a sufficiency challenge is well-settled.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Valentine,** 101 A.3d 801, 805 (Pa. Super. 2014) (citation omitted).

The DUI statute provides, in relevant part, that "[a]n individual may not drive, operate[,] or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1). As noted above, the crime may be proven by means of wholly circumstantial evidence. **Valentine**, 101 A.3d at 805.

- 8 -

There is no doubt that in addition to Trooper Sandusky's testimony regarding Hess's physical demeanor, other record evidence indicated that Hess had been driving while impaired by alcohol. That evidence included (1) testimony from Trooper Sandusky regarding the radar reading showing him driving at 23 miles per hour over the speed limit; (2) the field sobriety test result; (3) the BAC breathalyzer test result; and (4) Hess's confession to Trooper Huffstutler that he had consumed four or five beers on the day he was stopped by Trooper Sandusky.

In light of our standard of review, we conclude that the evidence was sufficient to support the court's conclusion that Hess had "imbibe[ed] a sufficient amount of alcohol such that [he was] rendered incapable of safely driving." 75 Pa.C.S.A. § 3802(a)(1). Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2015