691 A.2d 958

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Dale James DEMOR, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 18, 1996.

Filed March 31, 1997.

Martin W. Sheerer, Pittsburgh, for appellant.

James R. Gilmore, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before DEL SOLE, POPOVICH and HESTER, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Allegheny County following appellant's conviction on the charge of driving while under the influence of alcohol, 75 Pa.C.S.A. § 3731(a)(4) and (a)(5).[1]  On

---

1.  175  Pa.C.S.A. § 3731 provides, in pertinent part:

> § 3731.  *Driving under influence of alcohol or controlled substance*
> *(a) Offense defined*-A person shall not drive operate or be in actual physical control of the movement of any vehicle:
>
> (4) while the amount of alcohol by weight in the blood of the person is 0.10% or greater; or
>
> (5) if the amount of alcohol by weight in the blood of the person is 0.10% or greater at the time of a chemical test of a sample of the person's breath, blood or urine, which sample is:

appeal, appellant contends that the results of his breathalyzer test should have been suppressed and that his conviction pursuant to Section 3731(a)(5) was unconstitutional. We find that the lower court did not err in failing to suppress appellant's breath test results, and, therefore, we affirm the judgment of sentence for his conviction under Section 3731(a)(4). However, we agree that Section 3731(a)(5) is unconstitutional, and, therefore, we reverse the judgment of sentence with respect thereto.

■ Our standard of review in this case is well-settled. In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and reverse only when the court draws erroneous conclusions from those facts. *Commonwealth v. Guerrero*, 435 Pa.Super. 440, 646 A.2d 585 (1994).

Keeping the applicable standard of review in mind, we find that the relevant facts and procedural history are as follows: On January 28, 1995, at approximately 3:08 a.m., appellant was stopped by Officer Lawrence Storch. Believing that appellant was driving while under the influence of alcohol, Officer Storch administered three field sobriety tests to appellant, all of which appellant failed. Appellant was arrested at 3:19 a.m. and immediately transported to the Monroeville police station. At approximately 3:55 a.m., while at the police station, appellant submitted to a breathalyzer test on the Intoxilyzer 5000.[2] The results of his breath test indicated that he had a blood alcohol content of .170%. Consequently, appellant was charged with driving while under the influence of alcohol pursuant to 75 Pa.C.S.A. § 3731(a)(1), (a)(4), and (a)(5).

(i) obtained within three hours after the person drove, operated or was in actual physical control of the vehicle....

**2.** "The breathalyzer test is a chemical intoxication test designed to determine the alcoholic content of a breath sample provided by a suspect." *Commonwealth v. Sweet*, 232 Pa.Super. 372, 335 A.2d 420, 422 (1975).

As a result of information learned through the discovery process, appellant filed a motion seeking to suppress the results of his breathalyzer test. During discovery, appellant learned that during the weeks prior to his breathalyzer test other suspects had been tested on the same machine and the results of their two consecutive tests deviated from one another by .020% or greater. Appellant also learned that while the machine was placed out of service and tested for accuracy and calibrations on January 10, 1995, two days after the last variance incident, the machine was not examined internally by a technician.[3]

At the suppression hearing, appellant argued that the breathalyzer machine was to be examined internally before it was checked for accuracy and calibrations by Jerry Richey, the technician in charge of the machine.[4] Appellant further argued that the mere calibration and testing of the machine for accuracy following the last variance incident was insufficient to show that appellant's breath test was done using the procedures prescribed by the Departments of Health and Transportation, 67 Pa.Code §§ 77.21–77.27, and, therefore, the results of his breathalyzer should be suppressed. Appellant also moved to dismiss count three of the information charging him under Section 3731(a)(5), alleging that this statutory section was unconstitutional.

The Commonwealth argued that Technician Richey strictly followed the rules governing the maintenance of breathalyzer machines when he placed the machine out of service and tested it for accuracy and calibrations on January 10, 1995. The Commonwealth further argued that after Technician Richey tested the machine for accuracy and calibrations, he

3. Appellant does not allege that the breathalyzer machine malfunctioned during his test, nor does he dispute that his two consecutive breath samples were within the acceptable .020% variance. Rather, he argues that since the breathalyzer machine was not examined internally after the machine had registered a variance of .020% or greater while testing other subjects, the applicable regulations were not followed.

4. It is undisputed that in Allegheny County Technician Richey was the only person who maintained the intoxilyzer 5000 machines, including the one used by appellant.

concluded that the machine was not broken but that the variance recorded prior to appellant's breath test resulted from the subject blowing into the instrument incorrectly. Therefore, the Commonwealth argued, it was unnecessary for him to examine the internal components of the machine.

The suppression court found that the breathalyzer machine was maintained properly, and, therefore, denied appellant's motion to suppress. The lower court declined to consider appellant's motion to dismiss since *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996), was pending before the supreme court.

Following a jury trial, appellant was convicted of driving while under the influence of alcohol pursuant to Sections 3731(a)(4) and (a)(5). For his conviction under Section 3731(a)(4), appellant was sentenced to a mandatory term of thirty days incarceration, with an additional term of one year probation, and directed to pay a fine of $300.00, plus costs. N.T. 3/1/1996 pp. 167–168. He was given no further penalty for his conviction under Section 3731(a)(5). N.T. 3/1/1996 p. 168. This appeal followed.

In this case of first impression, appellant maintains that his breath test results should have been suppressed since Technician Richey failed to examine the internal components of the machine prior to checking the machine's accuracy and calibrations.[5] Appellant argues that because of this error, the Commonwealth failed to demonstrate regulatory compliance requiring such machines to be "serviced, repaired and adjusted, as necessary . . . . prior to being placed back into service." *See* 67 Pa.Code § 77.24(c). We disagree.

Our legislature has provided that, under certain conditions, the results of chemical testing for blood alcohol content shall be admissible in court. The Motor Vehicle Code provides, in relevant part:

5. In *Commonwealth v. Townsend*, 418 Pa.Super. 48, 613 A.2d 564 (1992), the appellant raised the precise issue which is before us *sub judice*. However, we decided that case on other grounds and never reached the merits of appellant's argument regarding the internal inspection of the breathalyzer machine.

*(c) Test results admissible in evidence.*-In any summary proceeding or criminal proceeding in which the defendant is charged with violation of section 3731 ..., the amount of alcohol ... in the defendant's blood, as shown by chemical testing of the person's breath, ... which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

(1) Chemical tests of breath shall be performed on devices approved by the Department of Health *using procedures prescribed jointly by regulations of the departments of Health and Transportation.* Devices shall have been calibrated and tested for accuracy ... in a manner specified by regulations of the departments....

75 Pa.C.S.A. § 1547(c) (emphasis added).

Pursuant to this statute, regulations governing the proper administration of breathalyzer tests were developed. The applicable regulations at issue in this case provide, in pertinent part:

*§ 77.24. Breath test procedures.*

*(b) Procedures.* Alcohol breath tests shall be conducted by a certified breath test operator. Accuracy inspection tests and calibrations conducted using breath test equipment shall be performed by a certified breath test operator....Alcohol breath tests, accuracy inspection tests and calibrations conducted using breath test equipment shall be performed in accordance with accepted standard procedures....The procedures for alcohol breath testing shall include, at a minimum:

(1) Two consecutive actual breath tests, without a required waiting period between the two tests.

(2) ... The lower of the two actual breath test results will be the result used for prosecution. The test results will be disregarded, and the breath test device will be removed from service under § 77.25(b)(4) [6] (relating to accuracy in-

---

**6.** Section 77.25(b) provides, in relevant part, the following:
   *§ 77.25. Accuracy inspection tests for Type A equipment.*
   *(b) Procedures.* Procedures shall be as follows:

spection tests for Type A equipment) if one of the following occurs:

(i) If the difference between the results of the two actual breath tests is . . . .020 or more for machines read to the third decimal place.

*(c) Procedures for adjustment.* Breath test equipment which fails the testing under § 77.25(b) or subsection (b) shall be placed out of service and shall be serviced, repaired and adjusted, as necessary . . . prior to being placed back into service. In addition, the breath test device shall be tested under subsection (b) prior to being placed back into service.

67 Pa.Code § 77.24(b) and (c).

We interpret the regulations to mean that pursuant to Sections 77.24(b)(2)(i) and 77.24(c), when the results of two consecutive breath tests deviate from one another by .020% or greater, the breathalyzer machine must be tested for accuracy and calibrations, and, then, if necessary, serviced, repaired or adjusted. After the necessary repairs or adjustments have been made, the machine is to be re-tested for accuracy and calibrations under Section 77.24(b) to ensure that any defects in the machine have been corrected. We explicitly find that *only* those machines which have failed accuracy and calibrations testing under Sections 77.24(b) or 77.25(b) must serviced, repaired or adjusted as needed, and then re-tested for accuracy and calibrations. To interpret the Code as requiring service, repair or adjustment of the machine before determining that the machine is malfunctioning defies common sense.

Here, it is undisputed that the breath test results of the last suspect who used the same machine as appellant deviated by .020% or greater. It is also undisputed that the

(4) Breath test equipment which has malfunctioned or which fails accuracy inspection tests shall be placed out of service and shall be serviced or repaired, as necessary . . . and shall be tested under § 77.26(b) (relating to periodic . calibration of Type A breath test equipment) prior to being placed back into service.
67   Pa.Code § 77.25(b)(4).

breathalyzer machine was placed out of service and tested for accuracy and calibrations on January 10, 1995, two days after the last variance incident prior to appellant's test. Since the machine passed the accuracy and calibrations tests, Technician Richey determined that the machine did not need to be serviced, repaired or adjusted. Therefore, the breathalyzer machine was put back into service and, on January 28, 1995, appellant was tested on the machine. We find that this was not error and satisfied the Code's mandates.[7] Accordingly, the lower court did not err in failing to suppress the results of appellant's breathalyzer test.

Next, we must address the validity of appellant's conviction under Section 3731(a)(5) in light of our supreme court's decision in *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162 (1996).[8] In *Barud,* the court declared Section 3731(a)(5) unconstitutional under both the United States and Pennsylvania Constitutions. In *Commonwealth v. Michuck,* 454 Pa.Super. 594, 686 A.2d 403 (1996), a panel of this Court held that *Barud* is to be applied retroactively since "an unconstitutional statute is ineffective for any purpose since its unconstitutionality dates from the time of its enactment and not merely from the date of the decision holding it so." (citation omitted). Therefore, we find that under the dictates of *Barud,* appellant's conviction pursuant to Section 3731(a)(5) must be vacated.

For all of the foregoing reasons, the judgment of sentence for the charge of driving while under the influence of alcohol pursuant to 75 Pa.C.S.A. § 3731(a)(5) is reversed, and appellant is discharged with respect thereto. In all other respects,

---

7. In his brief, appellant suggests that Technician Richey was not an authorized technician for the maintenance of the Intoxilyzer 5000 as is required by Section 77.24(b). We find that the record demonstrates that Technician Richey was certified by the manufacturer of the machine as a breath test "operator," and also certified in the maintenance of the machine. N.T. 2/16/1996 pp. 4–5. Therefore, we find that he was authorized to conduct the accuracy and calibrations check of the machine on January 10,

8. This issue was preserved properly in the lower court.

the judgment of sentence is affirmed.[9]

Judgment of sentence affirmed in part; reversed in part; jurisdiction relinquished.

9. In this case, the lower court imposed a penalty only for appellant's conviction under Section 3731(a)(4). Appellant received no further penalty for his conviction under Section 3731(a)(5). Therefore, it is unnecessary for us to remand this case for resentencing since our decision did not alter the lower court's sentencing scheme. *See Commonwealth v. Goldhammer*, 512 Pa. 587, 517 A.2d 1280 (1986) (where disposition by appellate court alters sentencing scheme of the trial court, it is within the appellate court's authority to remand the matter for resentencing).