**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Thomas E. HOOPES, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1998.
Filed Dec. 1, 1998.

§ 9728.

Richard F. Maffett, Jr., Harrisburg, for appellant.

Jaime M. Keating, Asst. District Atty., Carlisle, for Com., appellee.

Before JOHNSON, HUDOCK and HESTER, JJ.

HESTER, Judge:

Thomas Hoopes appeals from the October 21, 1997 judgment of sentence imposed following his third conviction for driving while under the influence. Appellant argues police did not follow required regulations set forth in the Pennsylvania Code governing admissibility of blood alcohol content ("BAC") tests, and the court erred in admitting the evidence. We affirm.

The record reveals that on November 1, 1996, Lower Allen Township Police Officer Leon Crone followed Appellant's vehicle after receiving a radio call regarding a vehicle being driven erratically. He stopped Appellant after watching Appellant's vehicle weave in its traffic lane. Appellant failed to pass field sobriety tests, and he was arrested for driving under the influence.

Officer Crone transported Appellant to the Cumberland County Booking Center. One of the booking officers, Agent Ickler, informed Officer Crone that the Intoxilyzer 500 pretest was bad and the simulator solution had to be changed. Agent Ickler suggested that Officer Crone transport Appellant to the local hospital for a blood test if Officer Crone did not wish to wait until the simulator solution was changed. Officer Crone chose to wait.

Cumberland County Booking Agent John Metro testified that he ran a pretest of the Intoxilyzer 500 with Agent Ickler prior to conducting two sets of two tests each of Appellant's breath. The two sets of tests were performed to determine whether Appellant's BAC was rising or falling. However, he first performed a pretest that yielded a result of less than .090%, which indicated to Agent Metro that he needed to change the

simulator solution. He changed the simulator solution before he conducted two tests of Appellant's breath. Appellant's lowest test result, which was the one introduced into evidence, was .163% BAC. The machine had been tested for accuracy on October 17, 1996, within thirty days of Appellant's arrest on November 1, 1996. The solution had a certificate of composition from the distributor, Guth Laboratories, certifying its content, and had an expiration date of July 23, 1997. Agent Metro indicated he did not conduct an accuracy test of the machine after changing the simulator solution and before testing Appellant's breath.

On cross-examination, Agent Metro denied that he first tested Appellant's breath, then changed the solution, and then tested Appellant's breath again. He admitted the log indicated two breath samples were taken prior to changing the solution but indicated this was a clerical error in the log. Police made a video tape but it did not start until Appellant's breath actually was tested. Agent Metro also conceded the log entries indicated that five tests of the simulator solution were conducted each time after the solution was changed previously, but police did not follow that same procedure in this case. Finally, he stated he did not perform a new thirty-day accuracy test after changing the solution.

Mr. Delbert Wass, a detective and DUI coordinator for the Cumberland County District Attorney's Office, testified that a pretest normally was performed on each shift. The simulator solution pretest is a test that alerts the operator if anything is wrong with the machine before testing the breath of an actual suspect, but that the pretest is not something required by state regulations. If the pretest indicates a result below .090%, the simulation solution should be changed. He observed the Pennsylvania Code requires that the machine be withdrawn and re-calibrated for accuracy only if the machine recorded a test of the simulator solution yielding a result below .090% when the simulation solution is tested as part of an actual breath test. However, if a low reading occurs during a pretest, the machine did not have to be removed from service since a pretest is not a test required or contemplated within the definitions contained in the Pennsylvania Code.

In support of this conclusion, Detective Wass opined that a breath "test" as defined in the Pennsylvania Code consists of both a simulator solution test *and* two tests of the breath of an actual suspect. It did not include an accuracy test consisting of five tests of the simulation solution. He disagreed with Appellant's assertion that a need to change the simulator solution revealed in a pretest constituted a "malfunction" so that an accuracy test was required to be conducted prior to taking an actual breath test of a suspect.

The suppression court credited Agent Metro's testimony that he changed the simulator solution before taking a sample of Appellant's breath and that the log entries reflected an error. It also concluded a low reading in a pretest is not a "malfunction," and the Pennsylvania Code did not require five tests of the simulator solution following a change of simulator solution and before testing the a suspect's breath and denied suppression of Appellant's BAC test result.[1] Appellant subsequently was convicted at a bench trial. The court imposed a sentence of incarceration of ninety days to twenty-three months, a fine of $310.00, a surcharge to the CAT fund of $200.00, and costs of prosecution. This appeal followed.

▆▆▆ Initially, we observe our standard of review for denial of a suppression motion is clear. In *Commonwealth v. Demor*, 456 Pa.Super. 766, 691 A.2d 958 (Pa.Super.1997), we stated:

> In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defen-

---

1. We observe Appellant should have filed a motion in *limine* rather than a motion to suppress. *See Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) (suppression motion is intended to vindicate constitutional rights violated by police). However, Appellant infers police misconduct occurred in his motion. Moreover, it is axiomatic that it is the substance of the pleading that matters, not the label. *Commonwealth v. Hess*, 489 Pa. 580, 414 A.2d 1043 (1980). The issue essentially concerns admission of BAC evidence, and the court chose to address the issue. We do so as well.

dant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and reverse only when the court draws erroneous conclusions from those facts. *Commonwealth v. Guerrero*, 435 Pa.Super. 440, 646 A.2d 585 (1994).

Appellant argues that the failure of the Intoxilyzer 500 in the pretest constitutes a "malfunction" of the machine under the regulations contained in the Pennsylvania Code. Also, he insists that changing the simulator solution constituted an alteration that required servicing and re-calibration so as to verify again the accuracy of the machine prior to conducting a test on an actual suspect. Appellant continues that since the machine should have been re-calibrated before his breath test but was not, his breath test results should not have been admitted into evidence.

In support, Appellant asserts that the admissibility of BAC results into evidence depends upon compliance with both the statutory requirements and the regulations. *Commonwealth v. Thill*, 417 Pa.Super. 485, 612 A.2d 1043 (Pa.Super.1992). He insists nothing in the Pennsylvania Code serves to indicate that "malfunctions" are limited to errors occurring only during **actual** testing of the breath of suspects. For example, Appellant notes that 67 Pa.Code § 77.25(b)(2) requires that five "tests" of simulator samples must be made to determine average deviation. 67 Pa.Code § 77.26(b) mandates that the machine must be removed from service and re-calibrated if a "test" produces a result either more than .01% lower than the simulator solution is designed to give or higher than designed, or if the deviation exceeds prescribed tolerances. If a machine is removed for servicing or repair, it must pass a re-calibration test before being placed back in service. 67 Pa.Code § 77.26(c). Thus, Appellant contends any time a BAC on simulator solution of less than .090% is obtained, either during an actual or a simulator test, the Code requires that the machine must be removed from service and be re-calibrated before further use.

We reject Appellant's argument. The use of the term "test" is defined variously in the Pennsylvania Code. 67 Pa.Code § 77.22 sets forth definitions. It defines an "accuracy inspection test" as defined as "a series of 5 simulator tests done using a simulator solution designed to give a reading of .10% conducted by a certified operator on a Type A alcohol breath test equipment within 30 days prior to using breath test equipment to perform an actual breath test." A "simulator test" is defined as, "Use of simulator solution in a breath simulation device to verify the accuracy of or calibrate Type A alcohol breath test equipment." A breath "test" consists of a sample solution test and two sets of actual tests of a suspect's breath. Thus, it follows that breath "test" as used in the Pennsylvania Code to determine when a machine must be serviced expressly is distinguishable from an "accuracy inspection test" or a "simulator test", contrary to what Appellant suggests.

Furthermore, in *Demor, supra,* at 962 (emphasis in original), we stated:

> We explicitly find that *only* those machines which have failed accuracy and calibrations testing under Sections 77.24(b) or 77.25(b) must [be] serviced, repaired or adjusted as needed, and then re-tested for accuracy and calibrations. To interpret the Code as requiring service, repair or adjustment of the machine before determining that the machine is malfunctioning defies common sense.

It follows that "malfunctioning," as we have interpreted it in *Demor*, means failing to perform on accuracy and calibration tests required to be performed as set forth in Sections 77.24(b) (accuracy inspection test) or during an actual breath test as set forth in 77.25(b) (actual test), and not otherwise. Section 77.24(b), in relevant part, provides:

> (4) Breath test equipment which has malfunctioned or which fails an accuracy inspection test shall be placed out of service and shall be serviced or repaired as necessary, ... and shall be tested under § 77.26(b) (relating to periodic calibration of Type A breath test equipment) prior to being placed back into service.

Similarly, Section 77.25(b), in relevant part, provides:

> Procedures.... The procedures for alcohol breath testing shall include, at a minimum:
>
> (1) Two consecutive actual breath tests, without a required waiting period between the two tests.
>
> (2) One simulator test using a simulator solution designed to give a reading of .10% to be conducted immediately after the second actual breath test has been completed ... The test results will be disregarded, and the breath test removed from service under § 77.25(b)(4) (relating to accuracy inspection tests for Type A equipment) if one of the following occurs: ...
>
> (ii) If the simulator test yields a result less than .09% or greater than .10% when the breath test device is read to the second decimal place, or if the simulator test yields a result greater than .109% when the breath test device can be read to the third decimal place.

■ Here the machine did not fail during an accuracy test, a periodic calibration test or during an actual test. Simply stated, a .090% BAC or above in a pretest is not a malfunction. A simulator solution as part of an actual or required test might have been a malfunction under § 77.26 if it had yielded a result less than .090% BAC. However, here the simulator solution test performed as part of the actual test was fine.

■ We find the suppression court correctly determined that the machine needed to be placed out of service and re-calibrated only if it failed or malfunctioned as delineated in 67 Pa.Code §§ 77.24(b) (during a calibration inspection test) or in 77.25(b) (during an actual test of a suspect), or if the simulation test exceeded the prescribed deviation during a calibration test. None of these events occurred in this case. To find otherwise, as noted by the trial court, would be absurd since a re-calibration test does not test the validity or reliability of the simulator solution that is verified by other means.

Finally, Appellant argues that his BAC test results should have been excluded since the Commonwealth failed to provide evidence of certification by an independent laboratory that tested the concentration of the simulator solution. The Commonwealth provided certification by the manufacturer of the solution that the content of the simulator solution was correct. In support, Appellant cites 67 Pa. Code 77.24 which, in relevant part, provides:

> (d) Simulator solution certification. The manufacturer of simulator solution shall certify to the test user that its simulator solution is of the proper concentration to produce the intended results when used for accuracy inspection tests or for calibrating breath test devices. This certification shall be based on a chromatographic analysis by a laboratory independent of the manufacturer.

However, as noted by the trial court, we have limited the burden on the Commonwealth of producing such certification to instances where a defendant has some evidence suggesting the concentration was not correct. In *Commonwealth v. Little*, 354 Pa.Super. 546, 512 A.2d 674, 677–678 (Pa.Super.1986), we stated:

> [W]e find that the placing of such product on the market by the manufacturer, after independent testing, to be certification to the user that the product will produce the intended results per statutory requirement. 67 Pa.Code § 77.24(d)(e). Absent some suggestion that the products were in fact defective, the Commonwealth was under no burden to show certification of the manufacturer's product.

■ Instantly, we agree with the trial court that *Little* is binding precedent. Appellant has introduced no evidence to suggest that the laboratory's product was defective. Consequently, the Commonwealth was not required to produce certification by an independent laboratory, and the trial court properly rejected Appellant's argument.

Judgment of sentence affirmed.