J-S07008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RYAN ANDREW MEHL, | |
| Appellant | No. 877 MDA 2014 |

Appeal from the Judgment of Sentence Entered May 2, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0004500-2013

BEFORE:  BENDER, P.J.E., OLSON, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED FEBRUARY 23, 2015**

Appellant, Ryan Andrew Mehl, appeals from the judgment of sentence of an aggregate term of five to ten years' incarceration, followed by two years' probation, imposed after a jury convicted him of sexual assault, indecent assault without consent, and indecent assault of an unconscious person.  After careful review, we affirm.

Appellant was arrested and charged with the above-stated offenses in March of 2013.  In January of 2014, he proceeded to a jury trial and was convicted.  Appellant was subsequently sentenced to five to ten years' incarceration for his sexual assault conviction; a concurrent term of one to two years' incarceration for his offense of indecent assault of an unconscious person; and a consecutive term of two years' probation for his conviction of indecent assault without consent.  Appellant filed a timely notice of appeal,

as well as a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he raises four issues for our review:

> I. Whether the trial court erred in concluding that the Commonwealth presented sufficient evidence at trial to sustain a conviction on the charge of Sexual Assault?

> II. Whether the trial court erred in concluding that the Commonwealth presented sufficient evidence at trial to sustain a conviction on the charge of Indecent Assault pursuant to 18 Pa.C.S.A. §[]3126(a)(1)?

> III. Whether the trial court erred in concluding that the Commonwealth presented sufficient evidence at trial to sustain a conviction on the charge of Indecent Assault pursuant to 18 Pa.C.S.A. §[]3126(a)(4)?

> IV. Whether the trial court erred in denying [Appellant's] oral motion for suppression and exclusion of his alleged statement to the affiant?

Appellant's Brief at 5.

Appellant's first three issues challenge the sufficiency of the evidence. We will address these claims together, applying the following standard of review:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant challenges his convictions for sexual assault, indecent assault without consent, and indecent assault of an unconscious person. A person commits sexual assault "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1. The term 'sexual intercourse' is defined in the Crimes Code as follows: "In addition to its ordinary meaning, [sexual intercourse] includes intercourse *per os* or *per anus*, with some penetration however slight; emission is not required." 18 Pa.C.S. § 3101. Appellant's indecent assault offenses are defined in 18 Pa.C.S. § 3126 as follows:

> **(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> > (1) the person does so without the complainant's consent;
> >
> > …
> >
> > (4) the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring;

18 Pa.C.S. § 3126(a)(1), (a)(4). "Indecent contact" is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

To prove these offenses at trial, the Commonwealth presented the following evidence. First, the victim in this case, S.R., testified that in

December of 2012, she was visiting her childhood friend, Amy Justice, at the home of Amy's sister, Jessica. N.T., 1/22/14-1/24/14, at 131-133. Jessica lived at the home with her husband, Appellant, and their two children. *Id.* at 186. Appellant was present at the home when S.R. and Amy arrived. *Id.* at 137. S.R., Amy, and Jessica began drinking heavily and playing drinking games. *Id.* at 137-143. The women were consuming vodka mixed drinks, as well as vodka shots. *Id.* at 137-138, 143. S.R. stated she had approximately two mixed drinks, as well as about seven shots of vodka during a 30 to 45 minute period when the women were playing a game called "Power Hour." *Id.* at 142-143. During this time, Appellant was not present. *Id.* at 142.

S.R. testified that at some point, she began playing video games with Jessica's oldest child. *Id.* at 144. The next thing S.R. recalled was "being on the couch with [Appellant] above [her]…." *Id.* at 145. S.R. testified that Appellant did not have clothing on, and while she knew she did not have pants on, she was unsure if her underwear was on or off. *Id.* at 146, 147-48. S.R. stated that Appellant was positioned "between [her] legs" and she "felt pain in [her] genital area…." *Id.* at 148, 149. S.R. clarified that the pain emanated from her vagina. *Id.* at 149. S.R. testified that she tried to push Appellant away, and he got off her after he "look[ed] towards the kitchen, as if hearing someone…." *Id.* at 151. S.R. then "rolled off the couch and … crawled towards [her] shoes and just slipped them on." *Id.* She "grabbed [her] phone and ran outside[,]" calling her boyfriend and

asking him to come get her. *Id.* As [S.R.] was standing outside the home, Appellant came out and offered to drive her to a nearby store to meet her boyfriend. *Id.* at 152. During the ride to the store, Appellant said that S.R. was "making him feel bad[,]" and told S.R. that she had "kissed [him]…." *Id.* S.R. admitted that she could not recall how the "contact between [her] and [Appellant] began[,]" but she was adamant that she would not have initiated the incident with Appellant because he was married with children. *Id.* at 152, 173, 174-175.

The Commonwealth also called Amy Justice to the stand at Appellant's trial. She corroborated S.R.'s testimony that she, S.R., and her sister, Jessica, were drinking heavily and playing games on the night in question. *Id.* at 247-252. Amy testified that S.R. became sick and vomited "at least twice." *Id.* at 252. Amy said that during this time, Appellant "tried to help" S.R. by bringing her "napkins and water." *Id.* at 252-253. Appellant also helped Amy get S.R. downstairs and onto the couch, as S.R. "was not able to walk by herself[.]" *Id.* While Appellant and Amy were "carrying [S.R.] downstairs," S.R. was talking, but was not making "too much sense[,]" and Amy "couldn't understand her." *Id.* at 253. Amy then testified:

> [Amy:] I asked [S.R.] if she was okay and needed anything and [whether she wanted to] sleep upstairs in my room with me or sleep on the couch. And I tried to get as much information out of her as I could, and it wasn't really working.
>
> [The Commonwealth:] So she wasn't responsive to your questions?

[Amy:] Not really. She would nod and she wasn't really saying anything of substance.

[The Commonwealth:] And you said that you were taking [S.R.] downstairs, what did you do after you got downstairs?

[Amy:] I believe he actually -- [Appellant] actually carried her to the couch and laid her on the couch.

[The Commonwealth:] And you mean carried, supported her walking?

[Amy:] Not really, like fully carried her, but I guess it was kind of simpler to walk her there. I don't know. But then I got her some napkins and water and a trash can and all of that stuff so she was like set up and posted on the couch.

[The Commonwealth]: And what was [Appellant] doing when you were doing that?

[Amy:] He was in and out of the kitchen. I think he went outside to smoke a cigarette at one point. I wasn't worried about him, he was worried about her. I then walked into the kitchen, talked about starting pancakes. …

And I had walked back into the living room after I had left [S.R.] in there and [Appellant] was knelt down by her face and he got up real fast. And I said, what were you doing, and he said, I was taking her hair out of her face so it wouldn't get in the throw up. I didn't think anything of it at that time.

[The Commonwealth:] And was [S.R.] awake at that point?

[Amy:] No.

[The Commonwealth]: And what happened after that?

[Amy:] I said -- like, the way that my house was set up, the stove was by the fridge and doorway and I posted up in the corner, leaning against the fridge, and [Appellant] was making pancakes on the stove right beside me.

…

And I don't know whether I wanted to smoke a cigarette or what the situation was, but I went upstairs and he was to bring me my pancakes when they were done. And I smoked like four cigarettes and I'm like, where are my pancakes.

I went back downstairs and he was in and out of the living room and I was [like], where are my pancakes what is going on. And he's like, oh, right there. And I grabbed them, [and asked him, "]are you coming upstairs[?"] [He said, "]I'll be right there.["] And I waited 20 minutes and finished the pancakes and smoked another cigarette or two and at that point he didn't come up and I went to bed.

[The Commonwealth:] And, Amy[,] when you put [S.R.] on the couch, did she fall asleep or pass out or what happened?

[Amy:] She might not have been … asleep, but she wasn't responsive, you know, like laying there, and she wasn't any bit conversational or anything like that. She just -- if she wasn't already asleep, she was going to sleep.

[The Commonwealth:] Was she moving around or anything like that?

[Amy:] No.

[The Commonwealth:] No. And you said you went to bed after that, correct?

[Amy:] I took a shower and then went to bed.

*Id.* at 254-256.

The Commonwealth also called to the stand Sergeant Craig Culp of the Hanover Borough Police Department. *Id.* at 291. Sergeant Culp testified that he became involved in investigating S.R.'s allegations against Appellant the day after the incident occurred. *Id.* During the course of his investigation, Sergeant Culp interviewed Appellant. *Id.* at 293. Appellant told the sergeant that S.R. was "belligerently drunk" and that she "came on to him … after she was on the couch." *Id.* at 294. Appellant stated that he and S.R. engaged in consensual oral sex, as well as consensual sexual intercourse. *Id.* at 295, 297. Appellant claimed that between the oral sex and intercourse, [S.R.] was "throwing up into a trash can." *Id.* Appellant

- 7 -

told Sergeant Culp that he stopped the intercourse before he ejaculated because "he was nervous about being caught, that he might have heard noises, that he felt bad and came to his senses and shouldn't be doing this … [because] [h]e's a married man with two kids that he loves very much." *Id.* at 295.

Appellant claims that this evidence was insufficient to prove that he engaged in sexual intercourse with S.R., that he did so without her consent, or that he did so while she was unconscious. Thus, he maintains that his convictions must be overturned. We disagree.

First, Sergeant Culp testified that Appellant admitted he had sexual intercourse with S.R., which was sufficient evidence to permit the jury to conclude that sexual intercourse took place. In regard to Appellant's contention that the evidence failed to prove that S.R. was 'unconscious,' we emphasize that section 3126(a)(4) also permits a person to be convicted of indecent assault when they know the victim "is unaware that the indecent contact is occurring[.]"[1] 18 Pa.C.S. § 3126(a)(4). Here, the evidence permitted the jury to conclude that Appellant had indecent contact with S.R. while knowing that she was unaware of what was happening. Namely, Amy testified that after S.R. began vomiting, she and Appellant carried S.R. to

_____

[1] We note that the jury was instructed that it could find Appellant guilty of indecent assault if it concluded that he "knew that [S.R.] was unconscious or unaware that the indecent contact was occurring, which rendered her incapable of consent." N.T., at 396.

the couch.  S.R. was not speaking coherently, and when they placed S.R. on the couch, she was asleep, or almost asleep.  Amy stated that at that time, S.R. was not responsive.  Amy also testified that she left the room and came back to find Appellant close to S.R.  Amy stated that S.R. was not awake at that point.  Amy then went to bed, leaving Appellant alone with S.R.  Appellant admitted to Sergeant Culp that S.R. was 'belligerently drunk' and claimed she was vomiting intermittently throughout their ostensibly consensual sexual encounter.  S.R. testified that she could not recall anything about the assault until she 'woke up' with Appellant on top of her.

Based on this evidence, the jury was free to reject Appellant's claim that S.R. consented to the sexual intercourse and, instead, conclude that Appellant had indecent contact with S.R. while knowing that S.R. was unaware of what was occurring.  Therefore, Appellant's conviction under section 3126(a)(4) is supported by sufficient evidence, regardless of his claim that S.R. was not 'unconscious.'  We also conclude that based on this evidence, the jury was free to find that Appellant engaged in indecent contact, as well as sexual intercourse, with S.R. without her consent.  Therefore, Appellant's convictions for sexual assault and indecent assault under section 3126(a)(1) were also supported by sufficient evidence.

In Appellant's fourth issue, he argues that the trial court erred by denying his oral motion to suppress his statement to Sergeant Culp.  Initially, we note that Appellant's motion to suppress was not made prior to trial as required by the Pennsylvania Rules of Criminal Procedure.  ***See***

Pa.R.Crim.P. 578 ("Unless otherwise required in the interests of justice, all pretrial requests for relief shall be included in one omnibus motion."); Pa.R.Crim.P. 581(B) ("Unless the opportunity did not previously exist, or the interests of justice otherwise require, [a] motion [to suppress evidence] … shall be contained in the omnibus pretrial motion set forth in Rule 578. If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed waived."). Nevertheless, the trial court considered Appellant's motion, and conducted a suppression hearing outside the presence of the jury. *See* N.T. at 279-287.

Appellant now argues that the trial court abused its discretion by not conducting "a full-scale suppression hearing." Appellant's Brief at 22. Appellant did not raise this issue in his Rule 1925(b) statement and, therefore, it is waived. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Nevertheless, our review of the record confirms that Appellant was not precluded from presenting any evidence or witnesses at the suppression hearing. Therefore, we would conclude that Appellant's argument that the trial court failed to conduct a "full-scale" hearing is meritless.[2]

_____

[2] Appellant also argues that his trial counsel was ineffective for not filing a written, pretrial motion to suppress. In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), our Supreme Court reaffirmed its prior holding in **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), that, absent certain

*(Footnote Continued Next Page)*

Appellant also avers that his statement to Sergeant Culp should have been suppressed because he was not provided with **_Miranda_** warnings prior to making that statement. Our standard of review for denial of a suppression motion is as follows:

> In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and reverse only when the court draws erroneous conclusions from those facts.

**_Commonwealth v. Hoopes_**, 722 A.2d 172, 174-75 (Pa. Super. 1998).

This Court has explained when **_Miranda_** warnings are required, as follows:

> A law enforcement officer must administer **_Miranda_** warnings prior to custodial interrogation. The standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person

*(Footnote Continued)* _____

circumstances, claims of ineffective assistance of counsel should be deferred until collateral review under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. **_Holmes_**, 79 A.3d at 576. The specific circumstances under which ineffectiveness claims may be addressed on direct appeal are not present in the instant case. **_See id._** at 577-78 (holding that the trial court may address claim(s) of ineffectiveness where they are "both meritorious and apparent from the record so that immediate consideration and relief is warranted," or where the appellant's request for review of "prolix" ineffectiveness claims is "accompanied by a knowing, voluntary, and express waiver of PCRA review"). Accordingly, we decline to review Appellant's ineffectiveness claim on direct appeal.

has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." "Interrogation" is police conduct "calculated to, expected to, or likely to evoke admission." When a person's inculpatory statement is not made in response to custodial interrogation, the statement is classified as gratuitous, and is not subject to suppression for lack of warnings.

The appropriate test for determining whether a situation involves custodial interrogation is as follows:

The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.

Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. The fact that a police investigation has focused on a particular individual does **not** automatically trigger "custody," thus requiring *Miranda* warnings.

*Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999) (*en banc*) (internal citations omitted; emphasis in original).

At the suppression hearing in the present case, Sergeant Culp testified that he spoke with Appellant on the telephone, and Appellant stated that he "wanted the interview, he wanted to give his side of the story." N.T., at 281. At that time, Appellant was in a drug rehabilitation facility in Maryland,

so Sergeant Culp traveled there to speak with him. *Id.* When the sergeant arrived, Appellant signed a form to allow the sergeant to enter the facility. *Id.* at 281-282. Sergeant Culp testified that he began the interview by telling Appellant that "he wasn't under arrest, he could get up and -- talk to me or get up and leave at any time." *Id.* at 282. Sergeant Culp also asked Appellant if "he [felt] like he was under arrest, and [Appellant] said no…." *Id.* When asked why he did not provide *Miranda* warnings to Appellant, Sergeant Culp answered, "Because [Appellant] was not in police custody nor was he under arrest at that time." *Id.* at 283.

On cross-examination, Sergeant Culp stated that when he interviewed Appellant, charges had not yet been filed against Appellant, and he was interviewing Appellant "in the normal course of the investigation…." *Id.* at 284. When asked if he had "any sort of expectation of what [Appellant's] statement was going to include[,]" Sergeant Culp replied, "Yes, I knew. I knew what he was going to say." *Id.* at 285. However, Sergeant Culp was not asked to elaborate. The sergeant stated that his conversation with Appellant was "just two men sitting and talking[,]" and Appellant appeared to be "relaxed." *Id.*

Based on Sergeant Culp's testimony, the trial court concluded that the interview of Appellant was not a custodial interrogation. We agree. Sergeant Culp's testimony indicated that the interview was initiated by Appellant; before the interview began, the sergeant told Appellant that he was not under arrest and could leave at any time; Appellant stated that he

did not feel that he was under arrest; and Appellant spoke to Sergeant Culp in a relaxed manner.  Considering the totality of these circumstances under the standard set forth above, we conclude that Appellant did not speak to Sergeant Culp while under conditions that were so "coercive as to constitute the functional equivalent of arrest."  **Mannion**, 725 A.2d at 200. Accordingly, **Miranda** warnings were not required, and the court did not err in denying Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2015