J-A01016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LATOYA N. HICKSON :
:
Appellant : No. 1132 EDA 2018

Appeal from the Judgment of Sentence November 15, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0030427-2016

BEFORE: NICHOLS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.: **FILED JANUARY 28, 2020**

Latoya H. Hickson (Appellant) appeals from the judgment of sentence imposed following her conviction of driving under the influence (DUI) – highest rate of alcohol.[1] We affirm.

The facts of this case are not in dispute. On the night of October 26, 2016, Appellant was arrested on Germantown Avenue in Philadelphia, Pennsylvania, on suspicion of driving under the influence of alcohol. Following transport to police headquarters, Appellant took a breathalyzer test, which indicated that her blood alcohol content (BAC) was 0.225, well above the legal limit. Consequently, Appellant was charged with, *inter alia*, DUI – highest rate of alcohol under Section 3802(c) of the Pennsylvania Vehicle Code.

_____

[*]Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(c).

During discovery in an unrelated case, the Commonwealth learned that, on June 4, 2016 (roughly five months before Appellant's breathalyzer test), the device the police used to test Appellant's BAC had produced two results on another individual that differed from one another by .020. Consequently, the police took that device out of service for maintenance and accuracy calibrations. On July 1, 2016, Officer Mary Beth Novak (Officer Novak), a police officer certified in the operation, maintenance, and calibration of breathalyzers, *see* N.T., 6/21/17, at 28, recalibrated the device and tested it for accuracy. Officer Novak determined that the device complied with the applicable regulations and that no repairs to the device were necessary. Officer Novak therefore placed the breathalyzer back into service.

On April 3, 2017, Appellant filed a motion to suppress the results of her breathalyzer test.[2] Specifically, Appellant alleged that the police should have removed the breathalyzer from service and repaired it before placing the device back into service, rather than merely recalibrating and retesting it. On June 21, 2017, the Philadelphia Municipal Court held a hearing on Appellant's suppression motion. On July 6, 2017, the municipal court denied the motion.

On October 11, 2017, the municipal court found Appellant guilty of DUI – highest rate of alcohol. On November 15, 2017, the municipal court

---

[2] Along with Appellant, several other criminal defendants, upon whom the police used the breathalyzer at issue after its return to service, filed identical suppression motions. The Philadelphia Municipal Court consolidated each of the motions for disposition.

sentenced Appellant to 72 hours to 6 months of incarceration. On December 6, 2017, Appellant filed a *writ of certiorari* to the Philadelphia County Court of Common Pleas challenging the denial of her suppression motion. On February 16, 2018, the Philadelphia Court of Common Pleas denied Appellant's petition for a *writ of certiorari*. This timely appeal followed.

Appellant presents the following issue for review:

> Where a breathalyzer machine produced BAC measurement results with such a variance between the results as to violate the regulations governing the use of breathalyzer machines, and where the Commonwealth then failed to have the machine serviced, repaired or adjusted as required by the regulations, did not the lower court err by failing to suppress breath test results for [] Appellant which were subsequently obtained through the use of that faulty breathalyzer machine?

Appellant's Brief at 3.

Appellant challenges the denial of her suppression motion. Our standard of review is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

***Commonwealth v. Jones***, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted). Our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***In re L.J.***, 79 A.3d 1073, 1087 (Pa. 2013).

Appellant argues that the trial court erred in denying her suppression motion. Specifically, Appellant asserts that because the breathalyzer produced results when the police used it on another individual that differed by .020 prior to its use on Appellant, the applicable regulations dictate that the police should have serviced and repaired the machine upon its removal from service — as opposed to simply recalibrating and retesting it. Appellant contends that because the police did not service or repair the breathalyzer following the deviation, the trial court erred in failing to suppress the results of her breathalyzer test.

The General Assembly has provided that the results of breathalyzer tests are admissible in court under the following circumstances:

> **(c) Test results admissible in evidence.--**In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath or blood, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

> (1) Chemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the Departments of Health and Transportation. Devices shall have been calibrated and tested for

accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation. For purposes of breath testing, a qualified person means a person who has fulfilled the training requirement in the use of the equipment in a training program approved by the Departments of Health and Transportation. A certificate or log showing that a device was calibrated and tested for accuracy and that the device was accurate shall be presumptive evidence of those facts in every proceeding in which a violation of this title is charged.

75 Pa.C.S.A. § 1547(c)(1).

The regulations, mentioned above, which govern the calibration and testing of breathalyzers, state, in pertinent part as follows:

(b) *Procedures*. Alcohol breath tests shall be conducted by a certified breath test operator. Accuracy inspection tests and calibrations conducted using breath test equipment shall be performed by a certified breath test operator, the manufacturer or its authorized representative or a person who has received comparable training or instruction. Alcohol breath tests, accuracy inspection tests and calibrations conducted using breath test equipment shall be performed in accordance with accepted standard procedures for operation specified by the manufacturer of the equipment or comparable procedures. The procedures for alcohol breath testing shall include, at a minimum:

(1) Two consecutive actual breath tests, without a required waiting period between the two tests.

(2) One simulator test using a simulator solution designed to give a reading of .10%, to be conducted immediately after the second actual alcohol breath test has been completed. The lower of the two actual breath test results will be the result used for prosecution. The test results will be disregarded, and the breath test device will be removed from service under § 77.25(b)(4) (relating to accuracy inspection tests for Type A equipment) if one of the following occurs:

(i) If the difference between the results of the two actual alcohol breath tests is .02 or more, for machines read to the second decimal place, or .020 or more for machines read to the third decimal place.

> (ii) If the simulator test yields a result less than .09% or greater than .10% when the breath test device is read to the second decimal place, or if the simulator test yields a result less than .090% or greater than .109% when the breath test device can be read to the third decimal place.

> (c) *Procedures for adjustment*. Breath test equipment which fails the testing under § 77.25(b) or subsection (b) shall be placed out of service and shall be serviced, repaired and adjusted, as necessary, by the manufacturer or its authorized representative or a person who has received comparable training or instruction prior to being placed back into service. In addition, the breath test device shall be tested under subsection (b) prior to being placed back into service.

67 Pa. Code § 77.24(b)-(c).

Appellant recognizes the authority articulated by this Court in ***Commonwealth v. Demor***, 691 A.2d 958 (Pa. Super. 1997). ***See*** Appellant's Brief at 28 ("Appellant concedes that if ***Demor*** controls, the denial of suppression here is correct under that holding."). In ***Demor***, we interpreted the regulations governing the admission of breathalyzer tests. We explained:

> We interpret the regulations to mean that pursuant to Sections 77.24(b)(2)(i) and 77.24(c), when the results of two consecutive breath tests deviate from one another by .020[] or greater, the breathalyzer machine must be tested for accuracy and calibrations, and, then, **if necessary**, serviced, repaired or adjusted. After the necessary repairs or adjustments have been made, the machine is to be re-tested for accuracy and calibrations under Section 77.24(b) to ensure that any defects in the machine have been corrected. We explicitly find that only those machines which have failed accuracy and calibrations testing under Sections 77.24(b) or 77.25(b) must be
> serviced, repaired or adjusted as needed, and then re-tested for accuracy and calibrations. **To interpret the Code as requiring service, repair or adjustment of the machine before**

- 6 -

> **determining that the machine is malfunctioning defies common sense.**

*Id.* at 962 (emphasis added).

Applying this rationale to the facts before it, the Court in ***Demor*** explained:

> Here, it is undisputed that the breath test results of the last suspect who used the same machine as appellant deviated by .020[] or greater. It is also undisputed that the breathalyzer machine was placed out of service and tested for accuracy and calibrations on January 10, 1995, two days after the last variance incident prior to appellant's test. Since the machine passed the accuracy and calibrations tests, Technician Richey determined that the machine did not need to be serviced, repaired or adjusted. Therefore, the breathalyzer machine was put back into service and, on January 28, 1995, appellant was tested on the machine. We find that this was not error and satisfied the Code's mandates. Accordingly, the lower court did not err in failing to suppress the results of appellant's breathalyzer test.

*Id.* (footnote omitted).

We find this case analogous to ***Demor***. Here, the police — approximately five months prior to their encounter with Appellant — used the breathalyzer at issue to test the BAC of another individual, and the machine produced two separate results that differed by .020. As with ***Demor***, the police took the device out of service, recalibrated it, and retested it for accuracy. *See* N.T., 6/21/17, at 37-38. Based on the retesting, the police determined that the breathalyzer did not need repair, and placed the machine back into service. *See* N.T., 6/21/17, Commonwealth's Exhibit 2 (Certificate of Breathtesting Device Calibration, 7/1/16). There is no evidence that the breathalyzer malfunctioned when the police used it on Appellant. *See* N.T.,

6/21/17, at 23. Therefore, we conclude that police actions satisfied the mandates of the regulations and **Demor**. Accordingly, the trial court did not abuse its discretion in denying Appellant's suppression motion.

Although Appellant recognizes the authority of **Demor**, she nevertheless asserts that we should disregard that decision because it "was simply wrong." Appellant's Brief at 35-36. However, Appellant does not identify any Supreme Court precedent that calls **Demor** into question. **See id.** "It is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, . . . except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." **Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006) (citation omitted).

Consistent with the foregoing, Appellant's suppression issue lacks merit. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/20