J-A19040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFREY ANDREW KOCHKODIN | : | |
| | : | |
| Appellant | : | No. 1514 WDA 2024 |

Appeal from the Judgment of Sentence Entered October 22, 2024
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s):  CP-17-CR-0000649-2023

BEFORE:  BOWES, J., STABILE, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:  `                    **FILED: NOVEMBER 12, 2025**

Jeffrey Andrew Kochkodin appeals *pro se* from the sentence of thirty days to six months in jail for his conviction of driving under the influence of alcohol ("DUI") and related traffic summary offenses.  We affirm Appellant's convictions, vacate his sentence arising from the DUI, and remand for resentencing.

The trial court summarized the background of this matter as follows:

[On] April 15, 2023, Pennsylvania State [Police] Troopers Austin Woolcock and Dylan Jarrett were conducting routine patrol when they observed [Appellant operating a vehicle in front of them,] weaving within his lane of travel and cross[ing] the white fog line several times while traveling under the posted speed limit.  The vehicle then turned left and was travelling in the center of an unmarked roadway and continued to weave.  At this point, the troopers . . . conducted a traffic stop.

Upon [the troopers] approaching the vehicle, [Appellant] only cracked his window.  However, Trooper Jarrett was able to observe that [Appellant]'s eyes were glossy and bloodshot.

Additionally, the odor of alcohol was em[anat]ing from the vehicle, [and Appellant] was having difficulty locating his documents and dropping them throughout the vehicle. When [Appellant] exited the vehicle and began to walk to the troopers' vehicle, he appeared unsure of his footing and a strong odor of alcohol was present. During field sobriety tests . . ., [Appellant] displayed signs indicative of impairment. . . . [Appellant] was placed under arrest. Thereafter, a breath sample was taken [at the state police barracks utilizing the Intoxilyzer 9000 breath test device,] and [Appellant]'s blood alcohol was measured at .114%[.]

Trial Court Opinion, 1/27/25, at 5-6 (some capitalization altered).

Based on the above, the Commonwealth charged Appellant with DUI, driving on right side of roadway, and two counts of driving on roadways laned for traffic. Appellant, then represented by counsel, filed an omnibus pre-trial motion seeking to suppress evidence arising from the traffic stop. The court denied the motion following a hearing wherein the Commonwealth introduced, *inter alia*, a video recording taken from the troopers' dashboard camera ("MVR").

Appellant's attorney was subsequently given leave to withdraw, and Appellant thereafter opted to represent himself. Relevant to his appeal, on March 14, 2024, the court entered a pre-trial discovery order stating that "[a]ll technical documentation, including manuals and certification and other aspects of the chemical testing, shall be provided no more than seven . . . days from today's date[.]" Order, 3/14/24, at ¶ 9. Additionally, it dictated that "[a]ny [d]iscovery provided after the third business day prior to the commencement of trial . . . shall be deemed inadmissible at the time of trial[.]" *Id*. at ¶ 7. As part of discovery, the Commonwealth produced documents

indicating that the Intoxilyzer 9000 underwent monthly testing and annual calibration by Trooper Woolcock. However, the Commonwealth did not provide any documentation verifying the accuracy of the simulator fluid utilized to perform those procedures.

This matter proceeded to a single-day bench trial on May 8, 2023. Notably, on that same morning, Appellant filed a motion *in limine* seeking preclusion of evidence concerning the results of the Intoxilyzer 9000 test. One of the claims raised was that because the Commonwealth did not submit documentation as to the accuracy of the fluid tested, and was now precluded from doing so after the start of trial pursuant to the discovery order, the Commonwealth could not establish a foundational basis for the breath test. Following brief argument during which the court expressed dissatisfaction with Appellant's waiting until the day of trial to file the motion, the court denied the same.

The Commonwealth then adduced evidence as to the above facts. Additionally, it introduced Exhibit 19, which was a report concerning the annual calibration for the Intoxilyzer 9000. Appellant objected on the basis that the report seemed to indicate that the calibration was not done in accordance with 67 Pa. Code § 77.26.[1] The objection was overruled. Additionally, the Commonwealth entered into evidence Exhibit 22, which was the report as to the chemical test performed on Appellant following the stop.

---

[1] As will be discussed in more detail *infra*, this provision outlines the procedure for calibration testing for certain breath test devices like the Intoxilyzer 9000.

Appellant objected that there was no certificate of analysis as to the ethanol solution used, similar to the claim in his motion *in limine*. The court again overruled the objection. Finally, the court admitted, over another of Appellant's objections, a copy of the Pennsylvania Bulletin, Volume 53, No. 40, listing the Intoxilyzer 9000 as an approved device for purposes of the Pennsylvania Code. We note that the bulletin was dated October 7, 2023, several months after the traffic stop in question. Although Appellant sought to preclude the document on the basis that the Commonwealth did not provide him with a copy prior to trial, he did not contest it due to the date of its applicability.

Appellant did not testify in his defense. At the conclusion of trial, the court found Appellant guilty of all offenses. He was later sentenced to forty-eight hours to six months of incarceration with regard to the DUI, and with no further penalty being instilled for the traffic violations. Critically, upon request of the Commonwealth via a motion for reconsideration of sentence, the court resentenced Appellant as indicated hereinabove as a second-time DUI offender because he had within the previous ten years undergone Accelerated Rehabilitative Disposition ("ARD") for a prior DUI charge.

This timely *pro se* appeal followed, and both Appellant and the trial court complied with the dictates of Pa.R.A.P. 1925. Appellant presents the following seven issues for our review:

> A. Did the trial court err when it denied [Appellant]'s suppression motion filed as part of [his] omnibus pre-trial motion and refused to suppress all evidence obtained as a result of the April 15, 2023,

traffic stop and search and seizure, as well as all fruit of the poisonous tree because the traffic stop was not supported by probable cause and accordingly was illegal, unreasonable, and unconstitutional in violation of Article I, [§] 8 of the Pennsylvania Constitution[,] as well as the Fourth Amendment and the Fourteenth Amendment of the United States Constitution?

B. Did the trial court err when it denied [Appellant]'s motion *in limine* to preclude the introduction or admission into evidence of the results and/or the discussion of the results of any breath alcohol tests administered to or provided by [Appellant] on April 15, 2023, using an Intoxilyzer 9000 breath test device?

C. Did the trial court err by admitting into evidence via testimony and exhibits the results of breath alcohol tests provided by [Appellant] on April 15, 2023, using an Intoxilyzer 9000 breath test device, because the Commonwealth failed to provide an adequate foundation or establish that the said device was properly tested for accuracy and calibrated in accordance with applicable law including but not limited to using simulator solutions that complied with the requirements of applicable law, and because the Commonwealth failed to provide a foundation establishing that the Intoxilyzer 9000 was a breath test device approved for use in the Commonwealth of Pennsylvania as of April 15, 2023?

D. Did the trial court err in finding [Appellant] guilty of violating each of 75 Pa.C.S. § 3802(a)(1); 75 Pa.C.S. § 3802(a)(2); and 75 Pa.C.S. § 3802(b), because the verdict on each of those charges was materially affected by the trial court's erroneous admission into evidence of [Appellant]'s April 15, 2023, alcohol breath test result obtained from the Intoxilyzer 9000 device?

E. Did the trial court err and violate [Appellant]'s due process rights, impose an illegal sentence, and/or abuse its discretion when it resentenced [Appellant] on October 22, 2024, for a second offense instead of for a first offense of [DUI] and imposed a recidivist mandatory minimum sentence for a second offense of driving under the influence upon [Appellant] under 75 Pa.C.S. § 3806 and 75 Pa.C.S. § 3804 without any prior conviction or incident of [DUI] by the [Appellant] having been proven in violation of the due process rights and procedural protections recognized by the United States Supreme Court in *Alleyne v. United States*, 70 U.S. 99 (2013) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Erlinger v. United States*, 602 U.S.

821 (U.S. 2024) and because 75 Pa.C.S. § 3806 unconstitutionally treats a prior occurrence of [ARD] as a prior offense?

F. Did the trial court err and violate [Appellant]'s due process rights, and/or abuse its discretion when it re-sentenced [Appellant] for a second offense instead of a first offense of [DUI] on October 22, 2024, in violation of [Appellant]'s due process rights to adequate notice of the charges and penalties the Commonwealth intended to seek because the Commonwealth explicitly charged [Appellant] with a "**1st OFFENSE**" of [DUI] in the criminal information and proceeded through verdict on charges alleging a "**1st Offense**" of driving under the influence?

G. Did the trial court err when it granted the Commonwealth's motion for reconsideration of the trial court's August 1, 2024, sentencing of [Appellant] for a first offense of [DUI]?

Appellant's brief at 4-7 (cleaned up, emphases in original).

Appellant's first claim relates to the court's refusal to grant his request for suppression. As to this issue, we have stated:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Davis***, 241 A.3d 1160, 1171 (Pa.Super. 2020) (citation omitted).

Appellant's underlying motion was premised upon Troopers Woolcock and Jarrett lacking probable cause to conduct a traffic stop. Appellant's claim implicates the Fourth Amendment of the United States Constitution, and

Article I, § 8 of the Pennsylvania Constitution, both of which protect citizens from unreasonable searches and seizures. *See Commonwealth v. Ward*, 318 A.3d 410, 414 (Pa.Super. 2024). To secure this right,

> courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. We have long recognized that there are three levels of intrusion involved in interactions between members of the public and the police. The first is a mere encounter, which requires no level of suspicion at all. The second level is an investigative detention, which must be supported by reasonable suspicion. Finally, the third level is an arrest or custodial detention, which must be supported by probable cause.

*Commonwealth v. Soto*, 202 A.3d 80, 90 (Pa.Super. 2018) (citation omitted).

Where a traffic stop is based upon reasonable suspicion of a Vehicle Code violation, it "must serve a stated investigatory purpose." *Commonwealth v. Bozeman*, 205 A.3d 1264, 1270 (Pa.Super. 2019). In contrast, "[w]hen no further investigation is necessary to determine if a driver committed a traffic violation or crime, the officer must possess probable cause to believe that the vehicle or the driver was in violation of some provision of the Code." *Id*. (cleaned up). Finally, "[p]robable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to believe that a defendant has or is committing an offense." *Commonwealth v. Fudge*, 213 A.3d 321, 327 (Pa.Super. 2019) (citation omitted).

With respect to the offense of driving on roadways laned for traffic, the Vehicle Code states that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety."  75 Pa.C.S. § 3309(1).  Concerning a violation for driving on right side of roadway, "[u]pon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway" subject to several exceptions not applicable here.  *See* 75 Pa.C.S. § 3301(a).

Appellant first maintains that the traffic offenses underlying the stop in question, driving on right side of roadway and driving on roadways laned for traffic, do not necessitate further investigation and therefore require probable cause.  *See* Appellant's brief at 18-19.  He highlights what he perceives as inconsistent testimony from Trooper Jarrett at the suppression hearing concerning whether he "straddled" the middle of the road or drove "near" the middle of the road.  *Id*. at 20.  Appellant further contends that based on ***Commonwealth v. Enick***, 70 A.3d 843 (Pa.Super. 2013), any of his perceived deviations over the fog line were "minor" in nature and thus did not give rise to probable cause.  *Id*. at 21-22.  He relies on the ***Enick*** Court's statement that "[m]otorists maintain a constitutionally protected privacy interest in their vehicles that we must balance against strict enforcement of the Vehicle Code when such enforcement is a ruse to stop a vehicle."  ***Id***. at 23 (citing ***Enick***, 70 A.3d at 848).  Lastly, Appellant avers that the trial court erroneously relied upon information gathered by the troopers **after** the stop

to later justify it, and that the MVR did not support the notion that he violated the Vehicle Code. *Id*. at 25-26.

In its Rule 1925(a) opinion, the trial court accurately summarized the law pertinent to our review and concluded that based on the troopers' observations of Appellant crossing the fog line multiple times and riding in the middle of the road, there was probable cause for the traffic stop. *See* Trial Court Opinion, 1/27/25, at 4-6. The court, however, did not address the contention of whether the deviations were so minor as not to constitute a violation.

For its part, the Commonwealth argues that the court correctly denied suppression because Appellant clearly crossed the middle of the road and did not assert any statutory exceptions permitting the deviation, such as passing a vehicle or obstruction. *See* Commonwealth's brief at 10. It also contends that this case is informed by *Enick* because there, this Court found probable cause for a traffic stop when the driver crossed the yellow line for two to three seconds, whereas here Appellant drove on the middle of the road for an even longer period. *Id*. The Commonwealth also posits that with regard to crossing the fog line multiple times, the statute in question does not provide for exceptions, unlike the provision for driving on right side of roadway. *Id*. at 11-12. It concludes that because he swayed over the fog line on several occasions without any reason for doing so, the deviations were not so "minor" as to preclude a court's determination of probable cause. *Id*. at 12.

Upon review, we conclude that the court's decision to deny Appellant's motion to suppress was factually supported by the record and that its legal conclusions are sound. Specifically, the MVR introduced at the hearing, and which we have reviewed, confirmed that Appellant drifted over the fog line more than once while the troopers were behind him. Hence, there was an adequate basis for the stop for that reason alone. Although the **Enick** Court held that the statute for this offense "does not foreclose minor deviations" because it requires staying within a lane "as nearly as practicable," as Appellant contends, this does not mandate a trial court to excuse clear violations that are recorded on video. **See Enick**, 70 A.3d at 847. This is especially true when there was no evidence introduced to suggest that the stop here was a "ruse" by the troopers. **Id**. at 848.

Additionally, the MVR demonstrated that as Appellant then turned left onto another road, his vehicle drove along the middle of that road for a sustained period before eventually shifting back to the right side, at which point the troopers initiated the traffic stop. This footage aligned with the testimony provided by Trooper Jarrett during the suppression hearing and, therefore, supports the finding of probable cause for a stop premised on this particular violation. Accordingly, no relief is due.

Appellant's next three claims are inter-related, insofar as they concern the court's decision to allow introduction of the results of Appellant's breath test from the Intoxilyzer 9000. He first asserts that the court erred in denying his motion *in limine* because the Commonwealth failed to produce documents

establishing an adequate foundation for the breath test prior to the pre-trial discovery deadlines imposed by the court. *See* Appellant's brief at 27-33. Likewise, Appellant portends that the Commonwealth failed to lay the necessary foundational framework regarding the accuracy of the tests based on the evidence introduced at trial. *Id*. at 33-38. Finally, he concludes that the court erroneously convicted him by relying on this inadmissible and unreliable evidence. *Id*. at 38-39.

We note that "[w]hen reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." *Commonwealth v. Kane*, 188 A.3d 1217, 1229 (Pa.Super. 2018) (citation omitted). In turn,

> [t]he admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Williamson*, 330 A.3d 407, 414 (Pa.Super. 2025) (citation omitted).

As additional background for these claims, we note that the Pennsylvania Code calls for Type A breath test devices, such as the Intoxilyzer 9000, to undergo monthly inspections in order for the results of the tests to be admissible in court. Specifically, "[a]n accuracy inspection test shall be conducted on Type A alcohol breath test equipment within [thirty] days prior to using the breath test equipment to perform an actual alcohol breath test." 67 Pa. Code § 77.25(a). The section further calls for a battery of trials to be

- 11 -

performed utilizing simulator solution designed to give particular readings. *See* 67 Pa. Code § 77.25(b). "Upon satisfactory completion of the accuracy inspection procedure, the test shall be recorded on a certificate of accuracy" as approved by the Department of Transportation. *See* 67 Pa. Code § 77.25(c).

Furthermore, the Code also requires annual calibration of any such breath test machine. *See* 67 Pa. Code § 77.26(a) ("Type A alcohol breath test equipment shall be calibrated annually within [one] year of using the breath test equipment to perform an actual alcohol breath test."). As with the monthly accuracy test, there is a detailed procedure required for the calibration. *See* 67 Pa. Code § 77.26(b). Pertinent to Appellant's claims:

> Calibration testing a breath test device shall consist of conducting three separate series of five simulator tests. One of the series of tests shall use simulator solution designed to give a reading of .10%. One of the series of tests shall use simulator solution designed to give a reading of .05%. The last series of tests shall use simulator solution designed to give a reading above .10% which is a multiple of .05%.

67 Pa. Code § 77.26(b)(1).

Finally, we note that "[t]he manufacturer of simulator solution shall certify to the test user that its simulator solution is of the proper concentration to produce the intended results when used for accuracy inspection tests or for calibrating breath test devices." 67 Pa. Code § 77.24(d).

Appellant first argues that his motion *in limine* should have been granted to preclude admission of the Intoxilyzer 9000 test results for lack of

foundation. He notes that, in particular, the court entered an order on March 14, 2024, requiring that all technical documentation relating to chemical testing be produced on or before March 21. ***See*** Appellant's brief at 27. The Commonwealth failed to provide him with certificates verifying the accuracy of "the pertinent simulator solution," which would confirm that the Commonwealth performed its respective thirty-day testing and one-year calibration in compliance with the Pennsylvania Code. ***Id***. at 30. Appellant hence contends that without such information, the Commonwealth was necessarily incapable of establishing that the device was trustworthy and should not have been permitted to introduce the results at trial. ***Id***.

In a nearly identical vein, Appellant maintains that the court erred in admitting Commonwealth Exhibits 19 and 20 based on lack of trustworthiness or established foundation. ***Id***. at 33-38. Specifically, Exhibit 19, which went to the required annual calibration for the Intoxilyzer 9000, did not show that the Commonwealth performed the calibration tests in the correct order called for by 67 Pa. Code § 77.26(b), since the last test did not use a solution "designed to give a reading above .10% which is a multiple of .05%." ***Id***. at 33-34. Appellant likewise faults the court for allowing admission of Exhibit 20, demonstrating that the machine was given its thirty-day inspection test, because the Commonwealth did not further introduce "any [c]ertificates of

[a]nalysis" as to the simulator solutions used in the tests.[2]  *Id*. at 34-35.

Finally, Appellant contends that the test results were inadmissible because the

Pennsylvania Bulletin submitted by the Commonwealth, listing the Intoxilyzer

9000 as an approved device, was dated for approximately six months **after**

the time the test was administered.  *Id*. at 35-36.

The trial court addressed the arguments pertaining to the foundational

basis for the breath test device established at trial as follows:

> [T]he court is satisfied that there was ample evidence and testimony establishing that the Intoxilyzer 9000 was properly tested for accuracy and calibrated in accordance with Pennsylvania Administrative Code.  In accordance with 67 Pa. Code § 77.25, the Commonwealth through Exhibit 20, a Pennsylvania State Police Certificate of Breath Testing Device Accuracy, signed by Trooper Woolcock, established that the Intoxilyzer 9000 underwent the thirty[-]day accuracy test.  The exhibit also included the Accuracy Check information.  Further, Trooper Woolcock provided credible testimony that he performed the test to all required standards.
>
> The Commonwealth also established that it complied with 67 Pa. Code § 77.26 which requires that the equipment shall be calibrated annually within one year of using the breath test equipment through the admission of Exhibit 19.  Exhibit 19 is a Pennsylvania State Police Certificate of Breath Testing Device Calibration dated November 10, 2022 and signed by Trooper Woolcock.  The Certificate of Breath Testing Device Calibration also included the results of the calibration test, all three annual solution checks, a Certificate of Analysis Alcohol Reference

_____

[2] Appellant cites **Commonwealth v. Brosnick**, 607 A.2d 725 (Pa. 1992), for the premise that the Commonwealth is required to introduce such manufacturer's certificates.  *Id*. at 37.  However, **Brosnick** does not stand for this proposition.  Rather, that case concerned whether a defendant was entitled to a new trial based upon after-discovered evidence, namely a report from the Auditor General raising concerns over a particular manufacturer's production of simulator solution between the years of 1982 to 1987.

Solution for Simulator by Adirondack Environmental Services, Inc[.], and two Certificates of Analysis by Guth Laboratories, Inc. Based on the above, th[e] court is satisfied that the Commonwealth did establish adequate foundation that the device used was properly tested and was approved for use in the Commonwealth of Pennsylvania.

Trial Court Opinion, 1/27/25, at 8 (cleaned up). The trial court further concluded that there is no case law compelling the Commonwealth to provide evidence relating to certificates of calibration with respect to a breathalyzer machine.[3] *Id*. at 6.

In its brief, the Commonwealth argues that it established an adequate foundation for the reliability of the Intoxilyzer 9000 because the calibration utilized the correct ratios of solutions, even if the assessment was performed in a slightly different order than called for by the Pennsylvania Code. *See* Commonwealth's brief at 18-19. It additionally contends that any deviation in the testing order highlighted by Appellant did not give rise to a presumption of unreliability, since there was no dispute that the device had undergone numerous monthly accuracy tests since the annual calibration prior to

_____

[3] Regarding Appellant's motion *in limine*, the court determined that to the extent the Commonwealth produced any documents beyond the deadline called for in its pre-trial order, Appellant waived his opportunity to challenge any such omission. *See* Trial Court Opinion, 1/27/25, at 7. Appellant disputes this finding of waiver and accuses the trial court of misunderstanding his claim, which is not based on the Commonwealth's noncompliance with the discovery order so much as the fact that pursuant to the order, the Commonwealth lost the opportunity to remedy any evidentiary shortcomings with additional technical documentation at trial. *See* Appellant's brief at 31-33. To add to the confusion, the Commonwealth maintains that it, in fact, satisfied all discovery requests in a timely fashion. *See* Commonwealth's brief at 13-15. Since it does not inform our decision, we do not consider the trial court's finding of waiver.

Appellant's breath test. *Id*. Furthermore, the Commonwealth cites *Commonwealth v. Starr*, 739 A.2d 191, 196 (Pa.Super. 1999), to support the trial court's determination that it had no burden to produce certificates relating to the testing fluid. *Id*. at 17.

In *Starr*, the defendant lodged an objection to a witness's trial testimony relating to the results obtained from an Intoxilyzer 5000 breath test "on the basis that the Commonwealth did not admit into evidence a manufacturer's certification of the simulator solution used in conjunction with the device." *Starr*, 739 A.2d at 195. Relying on prior precedent from this Court, we found that "the legislature has spoken on this issue and that the Commonwealth does not bear the burden of simulator solution or ampoule certification." *Id*. at 196 (citing *Commonwealth v. Little*, 512 A.2d 674 (Pa.Super. 1986)). This was because, *inter alia*, the manufacturer of the solution was in the best position to independently test its product and verify its accuracy prior to introducing it to the market. *Id*.

We find that *Starr* is binding authority that squarely controls this issue. As such, to the extent that Appellant's arguments rely on the Commonwealth's failure to introduce the certificates of analysis as to the solution used for testing, he is not entitled to relief.[4] Otherwise, we again find no issue with

---

[4] We recognize that in his brief, Appellant contends that *Starr* was wrongly decided and inconsistent with previous authority from our Supreme Court. *See* Appellant's brief at 31-32. However, even if Appellant was correct, we lack the authority to overturn a prior precedential decision of the Court. *See*,
*(Footnote Continued Next Page)*

- 16 -

the court's decision to allow introduction of the challenged documents, either in response to Appellant's motion *in limine* or his objections at trial. The court cogently recounted that substantial evidence introduced by the Commonwealth at trial established compliance with both the annual calibration and monthly accuracy testing. Finally, with respect to the argument that the court erroneously allowed the Commonwealth to admit a volume of the Pennsylvania Bulletin identifying the Intoxilyzer 9000, Appellant never objected at trial to its admission for relating to the incorrect period. Therefore, that contention is waived. ***See***, ***e.g.***, ***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa.Super. 2012) ("A party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made." (citation omitted)).

Appellant's remaining issues pertain to the legality of his sentence. He argues that the court erred in resentencing him as a second-time DUI offender because of his prior acceptance of ARD. ***See*** Appellant's brief at 39-61. The Commonwealth concedes that Appellant is entitled to relief on this claim, pursuant to our High Court's recent decision in ***Commonwealth v. Shifflett***, 335 A.3d 1158 (Pa. 2025). ***See*** Commonwealth's brief at 25-26. We agree with the parties.

---

***e.g.***, ***Halpern v. Ricoh U.S.A., Inc.***, 299 A.3d 1023, 1029 n.5 (Pa.Super. 2023) ("[I]t is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." (citation omitted)). Appellant has not cited any such intervening authority and we are therefore bound by our own precedent.

The **Shifflett** Court held that 75 Pa.C.S. § 3806(a)(1) "is facially unconstitutional to the extent it allows a previous acceptance of ARD to be used as the basis for an enhanced sentence under" 75 Pa.C.S. § 3804. **See Shifflett**, 335 A.3d at 1178. Here, it is undisputed that the trial court considered Appellant's conviction to be a second DUI in the past ten years because Appellant previously underwent ARD. Thus, the court erred in imposing a sentence by the authority of a statute that has since been deemed unconstitutional. Appellant is therefore entitled to be resentenced for his DUI conviction in accordance with **Shifflett**.

In sum, we affirm Appellant's convictions for DUI and the related traffic offenses. However, we vacate the sentence with respect to the DUI and remand for resentencing.

Convictions affirmed. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/12/2025

- 18 -